MARGARET SHABER, Administratrix, *vs.* ST. PAUL, MINNEAPOLIS & MANITOBA RAILWAY COMPANY.

July 6, 1881.

**Evidence—Negligence.**—Evidence considered, and *held* sufficient to sustain a finding that there was negligence on the part of defendant, and none on the part of the person killed at a railroad crossing.

**Same—Effect of Dazzling Light on the Eye.**—The action being for negligence in causing the death of plaintiff's intestate, by running a locomotive over him at a street crossing, the accident having happened in the dark, immediately after another train, with a bright head-light, had passed the crossing, *held*, it was proper, under the circumstances, to admit evidence how long the eye requires, after looking at a brilliant light, to recover its natural power of sight.

**Damages—Evidence of Deceased's Business Ability, etc.**—In an action under Gen. St. 1878, *c.* 77, § 2, evidence of the amount of property deceased had acquired, his habits of industry, his ability to make money, and his success in business, is proper as a basis for the damages.

**Negligence—Want of Sign over Railroad Crossings.**—In an action against a railroad company for negligence in running over one at a street crossing, evidence that the company had no sign over the crossing to warn persons approaching of its presence, is proper, although there be no statute or ordinance requiring the company to have such a sign. It is for the jury to say whether the omission to have such a sign is negligence; and it is for them to say whether it contributed to the injury, even where it appears that the person injured was familiar with the crossing.

**Same—Rate of Speed of Trains.**—If ordinary care and prudence, and due regard for the safety of third persons, require engines and trains to be run at a less rate of speed than that limited by an ordinance of the city, the company must observe such care and prudence.

**Same—Evidence of Usual Rate of Speed of Trains.**—When the rate of speed at which the engine causing the injury was running at the time is in controversy, upon the evidence, the plaintiff, to sustain his other evidence on the point, may show that the engines of the company habitually run, under like circumstances with the one in question, at the rate indicated by his other evidence.

**Same—Precautions taken after an Accident.**—Evidence that the company, immediately after an accident at a street crossing, adopted certain precautions to prevent similar accidents, is admissible to prove that such precautions would have been proper at and prior to the accident, and that the omission of them was negligence.

**Same—Degree of Care required of a Pedestrian.**—An instruction that it is not necessarily the duty of a traveller approaching a railroad crossing to stop and listen before stepping upon the track, and that whether it is necessary and proper for him to stop depends on the circumstances of the case, is not erroneous.

Appeal by defendant from an order of the district court for Ramsey county, *Wilkin*, J., presiding, refusing a new trial.

*R. B. Galusha* and *Bigelow, Flandrau & Clark*, for appellant.

*John B. & W. H. Sanborn*, for respondent.

GILFILLAN, C. J.[*]   Action by plaintiff, as administratrix of the estate of Henry Shaber, under Gen. St. 1878, c. 77, § 2, for causing the death of the intestate by negligence in running a railroad engine over him. The accident occurred at the place where defendant's track crosses Lafayette avenue, a public street in the city of St. Paul. At that place the track runs nearly north and south, the avenue nearly east and west. The deceased was at the time passing, in the evening, on foot along the avenue, coming from the east, and crossing, or about to cross, defendant's track. The engine was running backwards north towards and across the avenue. There was evidence tending to show that at the crossing there was no flagman or other person to warn passers on the highway of the approach of trains or engines, nor any precaution to prevent such passers crossing the track as trains or engines were approaching; that, owing to a hill and house and trees, the view of the track in the direction from which the engine was com-

----

[*]Clark, J., having been of counsel, took no part in this case.

ing was more or less obstructed to one passing on the avenue from the east towards the track; that the evening was dark, or rather obscure, cloudy, with a moon nearly new low in the west; that a great many trains and engines were constantly passing this particular point; that at the time a train with a bright head-light, ringing the bell, was on another track west of that on which the engine was, going south, in the direction opposite to that in which the engine which killed deceased was going, and had just passed the avenue; that such moonlight as there was cast the shadow of this train over the track on which the engine approached the crossing; that, in the shadow of this train, the engine approached the crossing, going at the rate of from twelve to fifteen miles an hour, and reached the crossing just as the train had passed; that the engine had a bright head-light, throwing its light in the direction opposite to that in which the engine was going, but no light looking in the direction in which it was going. Its bell was ringing. The testimony of the engineer in charge of the engine indicates that he knew that, owing to his engine being in the shadow of the passing train, the approach of the engine made the crossing dangerous. From this evidence the jury, if satisfied that the engine crossed the street at the rate of twelve or fifteen miles an hour, without any other warning than the ringing of the bell, the sound of which might be confounded with that of the bell on the passing train, were justified in finding that there was negligence on the part of the defendant.

The same circumstances which tended to show negligence on the part of defendant point out how the jury might reasonably find that there was no negligence on the part of Shaber in attempting, just at the time, to cross the track. There could be no ground for imputing negligence to him unless he knew of the approach of the engine, and that its nearness and rate of speed endangered his crossing, and, knowing it, he attempted to cross; or unless he attempted the crossing without taking proper care to learn—without using his senses to ascertain—if any engine, train or car was approaching on the track so near or so rapidly as to make his attempt to cross dangerous. There are no circumstances in the case requiring the conclusion that he knew the engine was coming towards the crossing, or that he saw

it at all. Nor does the fact that he attempted to cross, as it may be presumed, without seeing the engine, show that he did not look to see if anything was coming on the track; for he might have used both sight and hearing without learning of its approach. The noise of the train passing on one track might drown that of the engine on the other. The sound of the two bells ringing together might fail to call attention to the engine. The engine had no light on the end towards him. It was approaching in the shadow of the train. That he might have looked in the direction of the engine without seeing it is evident from the testimony of the fireman on the engine. He was looking towards the crossing. The engine was between thirty-five and fifty feet from it. Deceased was between ten and fifteen feet from it, walking towards it. The train was passing the crossing. Several flat cars in the train just then passing the crossing allowed the moonlight to cover deceased, so that the fireman saw him for a moment. Immediately some box cars in the train, behind the flat cars, threw deceased into the shade, so that, though the fireman knew where he was, and was apparently looking towards him to see him, he could not, owing to the darkness, see him until just as the engine struck him. The jury were justified in concluding that, as the shadow of the train prevented the fireman seeing deceased, it might also have prevented deceased seeing the engine.

On the trial, Dr. Flagg, a witness for plaintiff, was permitted, against defendant's objection, to testify how long the eye, after looking upon a dazzling light such as the head-light of a locomotive, requires to adjust itself to its natural power of sight, so as to be able to see in a more obscure light. The only objection to it made here is that the evidence was immaterial and irrelevant, because there was no proof that deceased did look at the head-light on the train as it passed, and also that, if he did look at it and was dazzled, it was his duty not to go upon the track until he had recovered his sight. The circumstances were such that the jury might believe the deceased did as was natural for any man in like circumstances to do, to wit, that he looked at so conspicuous an object in the darkness as a locomotive head-light when it passed him; and whether, if he was dazzled by it, it was negligence in him to go on before his full power of sight was

restored, or that he did step upon the track before it was restored, were questions for the jury.

The evidence admitted as to the amount of property deceased had at the time of his marriage, and at the time of his death, as to his habits of industry, his ability to make money, his success in business, and other details of that character, all tend to show what was the reasonable expectation of pecuniary benefit to his wife and children from continuance of his life. Vindictive damages, and damages for injury to feelings or loss of society, are not recoverable in actions under this statute. The damages must be based on pecuniary loss, actual or expected, and should be calculated in reference to a reasonable expectation of pecuniary benefit, as of right or otherwise, from the continuance of the life. *Potter* v. *Chicago & Northwestern R. Co.*, 12 Wis. 372; *Ewen* v. *Chicago & Northwestern R. Co.*, 38 Wis. 613. There is no way of showing the reasonable expectation of pecuniary benefit, except by proof of circumstances such as we have mentioned. The evidence was proper.

Evidence on the part of plaintiff was admitted, against defendant's objection, that there was no sign over this crossing, warning persons approaching it to look out for the cars. This is claimed to have been immaterial for two reasons—*First*, that the charter of the company, while it requires such signs over highways in the country, leaves it to the officers having charge of streets in cities and villages to require or not require it, and the officers of the city of St. Paul have never required it; and, *second*, that deceased was so familiar with the crossing that such a sign would have imparted no information to him.

As to the first of these, it is to be observed that the duty of a railroad company, as to the degree of prudence to be exercised, and the precautions to be taken to operate its railroad with safety to the public, is not limited to those things specially required by statute. Whatever precautions a prudent management of the road, with respect to the public safety, would require, it is the duty of the company to take, though they may be in addition to those required by statute, or though there be no statutory requirement on the subject. The specification by statute of certain precautions to be taken is not to be construed as a license to the company to omit other precau-

tions that may be necessary; nor does the silence of the statute as to any particular precaution exempt the company from the duty of taking it, if it be one which proper prudence requires. So, if the city council be authorized to limit the rate of speed at which engines and trains shall run, and there is an ordinance on the subject, still, if ordinary care and prudence, and due regard for the safety of third persons, require them to be run at a less rate of speed, the company must observe such care and prudence. Shearman & Redfield on Negligence, § 484; Wharton on Negligence, § 799.

It was for the jury to say whether the situation of this particular crossing was such that prudence required of the company to have a sign or something of the kind as a notice or warning to persons approaching the crossing along the street, and whether the omission of such a sign was an act of negligence on the part of the company. It was enough, for the purpose of making the evidence admissible, that the omission might or might not, according to the circumstances of the case, be negligence, and for the jury to say whether it was negligence. And if the jury found that the omission to have such a sign was negligence, it was for them also to find, and not for the court, whether it had any influence in bringing about the death of Shaber. That he was or was not so familiar with the crossing that, while approaching it, if he was acting as a prudent man should, he would necessarily have in mind, without any warning, such as a sign might give, how near he was to the crossing, was a question of fact to be passed on by the jury, and not by the court. The second reason for objecting to the evidence called on the court to pass on the fact. The evidence as to the fact was not so conclusive that the court could do so.

The rate of speed at which the engine was running was a contested point on the trial, the evidence for plaintiff tending to show that it was from twelve to fifteen miles an hour, that for the defendant that it was not more than five. The issue is made by the pleadings. The plaintiff was permitted, under objection, to prove what was the customary rate of speed at which engines of defendant, running backwards across Lafayette avenue as this engine was, and in the same direction, ran for a considerable time prior to this accident. There can

be no doubt that proof of particular instances in which defendant's engines ran at a given speed, or that they had occasionally run at a given speed, would not have been admissible, for from such detached cases no inference whatever could be drawn as to the speed of the engine in this instance.    But, where the evidence is conflicting as to the speed in a particular instance, proof of the customary or habitual speed at which the engines of defendant ran under like circumstances, may be given, to show that the evidence for plaintiff, or for defendant, is the more probable.    It could be given only in support of other evidence of the speed in the particular case.    It does not differ materially, in principle, from proof of a rule or regulation of the defendant, fixing the rate of speed for its engineers in such cases.    Such a rule or regulation would not be independent evidence that, in any particular instance, an engine was running at a prescribed rate; but it would be proper, as against the defendant, at any rate, in support of other evidence that the engine was going at that rate.

The evidence of the precautions taken by defendant after the accident, to guard against similar accidents at this crossing, was admissible, under the decisions of this court in *O'Leary* v. *City of Mankato*, 21 Minn. 65; and *Phelps* v. *City of Mankato*, 23 Minn. 276.

With respect to the degree of care with which a person travelling on a highway should approach a railroad crossing, the court below was right in its instruction to the jury that it is not, in all cases, his duty to stop and listen to ascertain if a train may be coming; that his duty in that regard must depend on the circumstances of the case, of which the jury are to judge.

Order affirmed.