## Ives v. Grand Trunk Ry. Co.[1]

*(Circuit Court, E. D. Michigan. June 25, 1887.)*

1. CONSTITUTIONAL LAW—TRIAL BY JURY—MOTION FOR NEW TRIAL.
   Whether under the seventh amendment of the constitution of the United States a motion to set aside the verdict of a jury can be heard before any other than the trial judge, as the circuit courts of the United States are now organized, *quære.*

2. SAME—REVIEW BY FULL BENCH.
   Whatever may be the influence of the seventh amendment of the constitution of the United States in relation to the power of another than the trial judge to hear a motion for a new trial, as the circuit courts of the United States are now organized, it is not the right of suitors under existing laws to ask a review before a full bench of the proceedings at a jury trial with a single judge.

3. SAME.
   The informal practice of reserving the motion for new trial, after verdict before a single judge, for argument and decision by a full bench, may be consistent with the requirements of the seventh amendment to the constitution of the United States; but a necessary limitation on that practice is that it must proceed entirely from the trial judge himself, and that it shall not be a right of the suitor against whom the verdict has gone to demand or request the trial judge to reserve the motion for that purpose.

At Law. Application to submit motion for a new trial to a full bench.

This was an action for damages for negligently killing the plaintiff's intestate. It was tried before the district judge of another district, sitting by designation. An application was made to have the motion for

---

[1] NOTE. At the request of the trial judge, the regular district judge sat in the court at the hearing of the motion for new trial, and it was, with his concurrence, overruled.—[REP.

a new trial heard before the circuit judge and the regular district judge upon his return, or before these or either of them and the circuit justice, if he should come, or before any of these and the trial judge, if necessarily he should hear the motion. ' The application was subsequently made in the following letter of counsel to the trial judge, accompanied by the grounds of the motion for a new trial, viz.:

                                                           "DETROIT, May 13, 1887.

"DEAR SIR: I have caused a motion for a new trial to be entered in the case of *Albert Ives, Adm'r, etc.,* v. *The Grand Trunk Ry. Co.,* and herewith send you a copy of it. You are aware that there is another case pending for the death of Mrs. Smith, caused by the same unfortunate accident. Both cases involve identically the same state of facts, and the law of one must be the law of the other. The main legal question in both cases is as to whether there was any negligence on the part of the deceased in driving upon the track without looking in the direction of the approaching train. The testimony shows no conflict on this subject. It is indisputable that the track could have been seen from the position of the parties in the buggy for the distance of three-quarters of a mile or more in the direction of the approaching train, had they stopped and looked just before entering upon the defendant's right of way. My contention is that this makes the question of contributory negligence one purely of law, and not of fact. There are other important minor questions involved in the motion. I have had a transcript made of the stenographer's notes of the testimony and proceedings at the trial, to be used on the argument. Now, what I have respectfully to suggest is that, inasmuch as the second case cannot be tried by you, but must be tried either by the circuit judge or the district judge of this district, and will probably be tried by the latter, this motion should be heard, if not by Judges BROWN and JACKSON together, at least by one of them—whichever is likely to try the second case—in conjunction with yourself. I see no reason why you may not with all propriety, if you desire so to do, refer the motion to Judge BROWN and the circuit judge together for hearing. It is the practice of Judge BROWN frequently to reserve such motions for argument before himself and the circuit judge together. I make this suggestion,—and I hope you will so understand it,—not from any desire to remove the motion from hearing by yourself, but in order to facilitate the disposition of it when the opportunity may be afforded by the presence of Judges JACKSON and BROWN, and the convenience of counsel interested will permit.

"Yours, truly,                                   E. W. MEDDAUGH.
"*Hon. E. S. Hammond, Memphis, Tenn.*"

*Don M. Dickinson,* for plaintiff.

*A. A. Harman* and *Otto Kirchner,* (*E. W. Meddaugh,* of counsel,) for defendant.

HAMMOND, J., (*after stating the facts as above.*) When the application contained in this letter was first made at the hearing by counsel then engaged in the trial, it was stated that, aside from any other embarrassments, the practice suggested might possibly be the re-examination of facts tried by a jury, otherwise than "according to the rules of the common law," and therefore in contravention of the seventh amendment of the constitution of the United States; and that the power of any other than the trial judge to determine a motion for new trial might be doubtful. It must be apparent that if this power exists it may be a matter

of right in the suitors to have the proceedings before the jury and their verdict re-examined by a full court; and that it should be well understood and regulated, as other such matters are, by rules of practice and procedure open alike to all litigants in the court, and not at all dependent upon any whimsical indulgence, miscalled "discretion," of the trial judge, be he the circuit justice, the circuit or the district judge; for it is manifest that the application can be made with no more right or propriety to one of these than to another, when their relation to the court and to each other is properly understood.  Indeed, if there be involved in the application any right in the suitor, or power in the full court, the wishes of the trial judge should not be at all consulted, in any such sense at least, as that he should control the question whether such a review should or should not be had, but the application should be made to the full court.  He might and should be consulted as to the facts occurring at the trial, and as to his judgment about the verdict; and, as a component part of the court hearing the motion for a new trial, if perchance he should be then in the court, he would take part in the disposition of the motion, but he alone, at least, should not determine whether a full court should hear the motion.  Either congress by statute, or the court by well-considered rules of practice, if there be authority, should regulate the matter, and must.  The absence of any such statute or rules would indicate that, as the courts are now organized, the power does not exist; and consequently the parties have no *right* to make such an application to the trial judge any more than to the full bench.

Yet, after as careful an investigation as I have been able to make into the common-law methods of hearing motions for new trial, in their relation to the trial judge, and of the cases which have considered the seventh amendment, I am not prepared to say that the practice proposed in this application is beyond the power of congress or the courts to adopt; and, of course, do not feel called on here to express an opinion on that question.  But to any one who undertakes to interpret the constitutional amendment by the light of the common-law methods of re-examining a fact tried by a jury, it will become obvious that in the federal courts it is impossible to imitate the constantly growing disregard of those methods by the practice prevailing in the states of reviewing the verdicts of juries in some appellate tribunal, generally the supreme court, into which all disputed questions of fact as well as of law are trundled, the trial court and jury being used only as a wheelbarrow with which to do the trundling.  Reformers of the federal judiciary having that end in view will find that no more with intermediate courts of appeal than with the supreme court of the United States can the constitutional restriction be evaded, however intense may become the desire of having facts tried by a jury re-examined in as many ways and as many courts as the legislature may choose, or the great American principle of the right of appeal may demand.  Perhaps the fullest indulgence in this regard possible under the federal constitution, as amended since our existing system was established, would come from the adoption of the common-law system of judicatory organization, whether that of the

ancient common-law or the *Nisi Prius* creation of the statute of Westminster. And it is possible that the re-examination of a fact tried by a jury in the only mode permitted by the constitutional requirement will always be impaired, or at least not fully operative, under any other system than that to which those rules of the common law, to which we are bound, were adapted. These contemplate a superior and supervising, but not appellate, court to do the work of adjudication; and the sending of one or more judges to try issues of fact with a jury, but under the supervision of the superior court, to which the record is to be returned with the trial judge's notes of evidence, his report of the proceedings, bills of exception, etc., where the rule to enter judgment, or for nonsuit, or motion in arrest of judgment, or for new trial, or on points or cases reserved, etc., and all like proceedings are to be heard; or else a trial at bar, as at common law, before the superior court itself. If this be too antiquated, whatever restrictions the constitution has imposed upon more modern methods of organization, or, rather, whatever inconveniences or loss of advantages may result from the inadaptation of modern organizations to the rules of the common law for the re-examination of a fact tried by jury, must be endured until the constitution be changed to rid us of the restriction. Const. U. S. amend. VII.

Under the common-law organization, to which these rules of the common law for the re-examination of facts tried by a jury were so nicely adjusted, the trial judge, as I understand it, whether the trial had been at *nisi prius* or at bar, was not at all necessarily a constituent part of the court to hear the motion for a new trial, nor any other motion in the further progress of the case. He might have been a justice of another court, or no justice at all,—in some cases being a sergeant, a sheriff, or an under-sheriff,—or any one to whom the king's commission to hold the assizes or sittings had gone, or to whom a writ of trial had issued. But the fundamental principle was that the motion for new trial must be heard in the court where the record was pending. But even as to that principle, by statutes passed before our Revolution, in some cases it came about that the motion for new trial could be heard in an entirely different court—in either the king's bench, common pleas, or exchequer— from that to which the case belonged. But in all the mutations of the practice at common law it was an essential, though not under all circumstances an indispensable, requirement that the trial judge's notes,—be he whom he might be, and to whatever court he belonged,—and his report of the trial, should be at hand, though not at all a part of the technical record; and these he might or might not furnish, as he should choose. And, if the ground of the motion was that the verdict was against the evidence, his opinion on that subject was controlling; not absolutely, in technical theory, for sometimes the rule was departed from, but nearly always in actual practice. It seems, however, that upon any other grounds that might be alleged for a new trial, his opinion was not of so much consequence; but as to that, and the ground of excessive damages,— which is only a branch of the other,—the trial judge who had seen the witnesses, had heard them testify, and in all things observed the progress

of the trial, precisely as the jury had, was considered the best possible judge of the merits of the motion based upon these grounds, for setting aside the verdict; and this, though he were only an under-sheriff or some petty judge of an inferior court to whom a writ of trial had issued.

Turning now to our federal organization, and avoiding all confusion of ideas growing out of the barest resemblance to its remote ancestor, and it cannot be said that we have any such system of courts as that to which "the common-law rules for the re-examination of a fact tried by a jury" may be applied or adapted. Our judges bear no such relation as that to the court nor to each other. When sitting alone they try a case with the jury, and necessarily, however constituted at the particular trial, the court *pro re nata*, is entire within itself; has no superior court or judge to supervise it; and, as now organized, can have none like the superior court at Westminster, supervising trials at *nisi prius* or the sittings for London and Middlesex, where the duties of the trial judge have been held to be ministerial, rather than judicial. The judges cannot, of themselves, by common practice, create such a system, nor distort the one we have into that without usurping legislative functions, and doing violence to the rights of the parties. Nor is this an unimportant consideration here, for, taking our organization as we find it, and it is best to understand, as always in such matters, precisely what are the grounds of any judicial action, the relation of the parties and the court to it, and of the judges themselves; for courts do not exist for any one case, nor for the especial benefit or indulgence of one particular suitor, but for all cases and suitors, among whom there should be no favoritism or special dispensations from constitutional or legislative trammels that are felt to be irksome, and, perhaps, justly so. There are other embarrassments that preclude a good-natured yielding to the eagerness of disappointed suitors for the indulgences asked by this application, not the least of which is the almost certain result of having to grant it in every case, thereby annulling the provisions of the statutes for the dispatch of business by a single judge. Most of the business is done that way, and must be; and a court of original cognizance, held by two or more judges, is almost an anomaly in American jurisprudence, and in the actual practice of our federal system it is but little more than a pretense, like that of selecting a president by an electoral college. Again, let us suppose a case tried by a circuit judge and a jury being reheard on a motion for a new trial before the circuit justice and the circuit judge, and that they differ in opinion. What is to be the result? Indeed, what is to be the result of such difference, on motion for new trial, if originally they heard the case together before the jury; and would there be any other rule of judgment in the one case than in the other? At common law the verdict would stand without reference to the opinion of either judge, except that the almost universal rule of practice was to permit the opinion of the trial judge to prevail on the question of the verdict being against evidence, and as to that, whether he be in the court that hears the motion or not, though as to other matters this was not the rule at all; and hence, perhaps, we have the common notion that none but the trial judge can hear a motion for new trial,

except he die, when *ex necessitate rei* it may be granted by the succeeding judge.

Under our system, prior to the act of 1872, (Rev. St. §§ 650, 652, 693,) the result of a difference between the two judges would have been the same as at common law, for it was not one of these questions which could have been certified to the supreme court. *Lanning* v. *London*, 4 Wash. C. C. 332. For constitutional reasons already mentioned, perhaps it remains a question that cannot be certified under the act of 1872, wherefore it may be that the opinion of the presiding judge could not prevail, and the result would still be the same, as at common law, and prior to the act of 1872. Practically, no doubt, the judge who did not hear the case would yield his judgment to the other, if insisted upon, for the same reasons precisely that the common law gave for the personal influence of the trial judge; but technically, perhaps, he would not be bound to do this, except upon the theory that technically he had no business in the court, and the trial judge had absolutely the only power to determine the motion. Or the trial judge would, deferentially, submit to the other because it would be *his* rulings that were challenged by those of his brother judge, and a modesty that might be exaggerated would control the question. Or another solution would be that the judges would grant a new trial only because of the difference of opinion, and this without reference to the merits of the motion; and that would be a situation for which the disappointed litigant and his zealous counsel would struggle with might and main; and we should find every one going through a process which should be allowed to all, if allowed to any; for the importance of the case in the heated imagination of the defeated suitor and his counsel can furnish no satisfactory test of discrimination between cases that are and those that are not to be allowed this advantage. But, more than this, either of these solutions, except perhaps the first, would be a re-examination of a fact tried by jury, otherwise than by the rules of the common law, which, on a divided opinion, would protect the verdict. Moreover, this unconstitutional result, if I may so speak, is far more likely to happen when the judges, upon the call of counsel, sit to hear the motion informally and not as a court fully charged with the business in hand than under any other circumstances. There is, therefore, in tolerating such applications an extent of embarrassment that forbids the practice of making them, to say nothing of that which the trial judge feels of being suspected of an insufferable self-conceit if he refuses the demand of counsel for what is somewhat inaccurately called a "full court," it being already full with the trial judge on the bench. If these considerations are correct, unless it can be determined that these applications are matters of right, in which case the court as constituted to hear the motion is the proper place to make the application, there is danger, if left to the trial judge to determine how the motion shall be heard, that he will too readily yield to the coercion of a fear that unpleasant imputations of resentment or self-conceit control him in refusing it.

In what has been said there is no purpose to deprecate the practice that prevails so extensively amongst us as co-ordinate judges of the same

court, of calling to each other's assistance in questions of difficulty, whether they arise on motions for new trial or otherwise. From the earliest history of the common law that informal practice,—so called because it is entirely beyond the demand or right of suitors, and is in itself intolerable but for that characteristic feature of it—has existed among the judges of the same court. Out of it has been developed the extensive practice of cases and points reserved at *nisi prius* or elsewhere for determination by all the judges, and the habit of shaping the trial so as to save the benefit of such consultations to the judges who feel that the advice of their brethren should be taken. The court of crown cases reserved, in England, owes its origin to this practice, which, in a sense, obviated any necessity for a writ of error in criminal cases. But a discrimination should be made between the rights of the parties in a strictly *nisi prius* system, like that of the common law, and the practice like that now under consideration, because, while they are very much alike in some respects, they are vastly different in essential characteristics. Wherever it is mentioned in the books, attention is called to the necessary limitation upon it that it must be wholly voluntary and informal, and proceed entirely from the judges themselves. No right exists in the parties to invoke it, and it is an encroachment of counsel to embarrass the judges by applying to them to advise with each other. The difficulty must otherwise appear than through the magnifying suggestions of counsel, after the point has been decided without any feeling of difficulty on the part of the judge, or any suggestion from him that the question should be submitted to all the judges. If the subject were thus left to counsel, not a point would be ever decided in any other way than by all the judges, and no case would be too unimportant to provoke the importunity of the counsel engaged.

In the oath originally prescribed for the judges errant or itinerant, in the time of Henry the Second, they were to do all kinds of right and justice in their circuits, "unless the controversy were of such importance that it could not be determined but in the king's presence, or so difficult that the judges doubted about it, and desired to refer it to the king." Worth. Jur. 105, 29 Law Lib. 35. By the common law everything had to be determined by the full court, and it was considered the absolute right of the suitors in all cases to have the decision of the four judges, until parliament passed acts allowing them to sit apart for the dispatch of business, as our congress has done. But "cases of difficulty are, at the instance of the judge himself, *ex mero motu*, sometimes argued before the full bench. That, however, is only in the judge's discretion, for the decision of the single judge is conclusive in all matters brought before him, unless he think fit to open the case for rehearing." 3 Chit. Pr. 6. And in an act of parliament providing for certain cases the judges were especially permitted to reserve questions of difficulty. But, says the author: "It will be observed that the desire of the suitor to appeal to the full court is not allowed to have any effect, but it rests entirely upon the discretion of the judge." Id. 17.

So Mr. Justice STEPHEN tells us, in speaking of this informal practice

in criminal cases, and of the growth of the court of crown cases reserved out of it, that before and after the statute creating that court it was "absolutely in the discretion of the presiding judge at a trial whether he will or will not reserve a point for its decision," and that so seldom is it done that the court has little to do, and does not try 20 cases a year. 1 Steph. Crim. Law, 311, 312. Mr. Circuit Judge McCRARY, in *Adams v. Spangler*, 17 Fed. Rep. 133, says:

"At the request of the district judge, the motion for a new trial has been heard by the full bench. I mention this lest counsel might fall into the misapprehension that motions of this character are heard by the circuit judge as a matter of course. It is only when the district judge requests it that they are so heard. If it were left to counsel, every case tried before the district judge would have to be reheard."

And he might have added that every case tried before the circuit judge would be reheard before the circuit justice, or the district judge, and every case tried by the circuit justice before one or both of the other two, because there is no substantial distinction in this regard, growing out of any differences of relative rank between the judges, if one stops to think of it, to furnish any limitation; and counsel would never stop as long as there was any chance for another judge. Other expressions in the books and cases could be abundantly cited to show that the judges have always discountenanced any practice which permits suitors to convoke this advisory court, if I may so call it, by an appeal to the trial judge, which in the nature of it is coercive, by introducing an element of undue influence, an indisposition, namely, to refuse that which, being refused, subjects him to the unpleasant imputations before referred to here. As in this case, there was no difficulty in it of a nature to suggest the necessity of a consultation for the purpose of solving the difficulty, and it seems to me that all that is said in favor of it is only magnifying its importance merely to have that review before the other judges, one or more, which counsel so earnestly desire. If I should grant it, it would be solely because counsel ask it, and that I do not shrink from the ordeal proposed; but, in my view, that is an utterly untenable rule of judgment in determining the application,—one that should have no influence on the question, and of which suitors should not be allowed to take advantage.

A system which in any case furnishes no review of questions of law arising at a trial by jury, whether the trial be before one judge or more, be he circuit justice, circuit or district judge, may be conceded to be unsatisfactory and defective; but the remedy is not with the judges, but with congress to provide an organization adapted to a constitutional amendment submitted the very day after the present judiciary system was established, and ratified several years after. If the judges are to mitigate the evil complained of, they should do it thoroughly and impartially, by uniform rules of practice which reserve every motion for a new trial for hearing before a full bench, and not confine the indulgence capriciously to those suitors who are most active and persistent in seeking it. No special favors to suitors or cases based upon any gradation of the relative importance of the cases can be shown in the administration

of judicial functions, without impairing confidence in the impartiality of the courts, if the discrimination proceeds from the court itself, and it cannot be responsible for such discriminations by congress. This has seemed to me, under the circumstances, a very important matter, and I have taken occasion to carefully consider it and determine, for myself at least, what a trial judge should do; but I shall submit these views to my brethren in the court, and be guided most cheerfully by their better judgment.

It is perhaps not proper now to consider in detail any of the arguments of this application that would somewhat involve the consideration of the grounds of the motion for a new trial; but it may be stated that they assume that the question of contributory negligence was one of law upon undisputed facts, which, however, was strenuously denied by the plaintiff, and at the trial it was submitted to a jury on the evidence, and found against the defendant. It is that ruling which the defendant wishes to review before other judges upon a stenographer's notes. If it were solely a question of law, perhaps, there could be, other objections aside, no serious obstacle to such a review of it, however informally; but if it be one of fact, perhaps the constitution of the United States protects the verdict against the proposed review, even if directed by an act of congress. The pendency of another suit by other parties cannot affect the question we have here. The defendant cannot complain if it has another chance before another jury and another judge and obtains a verdict. This verdict cannot properly influence that trial, and would not be permitted to do so. If it were proposed to try the other case upon the evidence or record here on this motion for a new trial, and to have both go off upon the decision of the proposed court of review, there might be some force in that suggestion; but, as it is, it seems to me unimportant. Application dismissed.

NOTE BY JUDGE HAMMOND. It has been my intention to append a note tracing with precision, so far as might be done from the law books, the practice to which the seventh amendment of the constitution of the United States has bound us, of re-examining a fact tried by a jury "according to the rules of the common law." I have before me the rough draft of such a note, and quite a mass of references to authorities that have been examined, but the subject is too extensive for so condensed a treatment as would be appropriate in this place.

The seventh amendment was submitted and ratified after our existing judiciary establishment was adopted, and there has never been any legislation with especial reference to that amendment, which has, of itself, a history that has a most important bearing on our subject. Now that there is a probability that the federal courts may be soon reorganized, there may be some pertinency in a suggestion that the force and effect of that amendment should be carefully considered in its relation to any reorganization that may be had. The amendment is very peculiar, and in all the constitutions of all the states there is nothing like it, except in the constitution of West Virginia, which substantially copies it. They have one and all protected the right of trial by jury, but none of them has forbidden the re-examination of a fact tried by a jury "otherwise than according to the rules of the common law," except these two. Such re-examination is, in most if not all the states, a very wide de-

parture in its methods from the rules of the common law, and it may be doubtful if any fact tried in a federal court has ever been re-examined "according to the rules of the common law." Congress has never taken the trouble to regulate such re-examination according to the constitutional requirement, nor to declare how it shall be done, under a judicial system established before the amendment was made, and which is ill adapted, to say the least of it, to the process of re-examining a fact tried by a jury "according to the rules of the common law."

The question arises whether congress is not confined by the amendment to some system of organization for the courts, wherein these rules of the common law may have full play, for nothing is plainer than that it has not the same freedom of action as the states, in providing for the re-examination of a fact tried by a jury. At all events, the courts should not be left during another century to flounder about as they have been left during that which will close September 24, 1889, the centennial of our judiciary act.