PITTSBURGH, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY *v.* TATMAN.

[No. 9,818. Filed March 7, 1919. Rehearing denied May 29, 1919. Transfer denied February 8, 1920.]

1. RAILROADS.—*Crossings.—Watchman.*—Whenever, in the exercise of due care and caution in the operation of trains, it becomes reasonably necessary, considering the nature, location and surroundings of a railroad crossing, to station a watchman thereat to give notice to travelers of approaching trains, and to signal when it will be reasonably safe to cross, it is the duty of a railroad company, independent of any statute or ordinance, to place a flagman at such crossing. p. 531.

2. RAILROADS.—*Crossings.—Flagman.—Recognition of Danger.*—That a railroad company had kept a flagman stationed at a highway crossing for a number of years, though not required to do so by statute or ordinance, was a positive and unequivocal recognition that the crossing was dangerous, and that the services of the flagman were reasonably necessary to protect travelers on the highway. p. 532.

3. RAILROADS.— *Crossing Accidents.— Action.— Complaint.— Sufficiency.—Right to Rely on Flagman.*—In an action against a railroad company for personal injuries, a complaint alleging that plaintiff was injured when his horse took fright at an approaching train while he was crossing defendant's tracks after having been signaled to cross by defendant's flagman, etc., *held*

sufficient, though it did not appear from the averments of the complaint that the railroad company was required to provide a flagman by statute or ordinance. p. 532.

4. RAILROADS.—*Crossings.—Duty to Signal Travelers.*—Where the ringing of a. bell, or other signal, is reasonably necessary to warn travelers about to cross railroad crossings of the approach of·trains, such signal should be given regardless of whether it is required by statute or ordinance. p. 532.

5. RAILROADS.—*Crossings.—Invitation to Cross an Assurance of Safety.*—Where a crossing watchman provided by a railroad company signals a traveler on the highway to cross, such signal is an assurance of safety on which the traveler is entitled to rely. p. 533.

6. TRIAL.—*Instructions.—Incomplete Instructions.—Duty to Request Fuller Instructions.*—Where an instruction given at plaintiff's request was a correct statement of the law as far as it went, it was the duty of defendant, if not satisfied therewith, to request the court to amplify it. p. 534.

From Blackford Circuit Court; *William H. Eichhorn,* Judge.

Action by George Tatman against the Pittsburgh, Cincinnati, Chicago and St. Louis Railway Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*G. E. Ross,* for appellant.

*Aaron M. Waltz, Ashley G. Emshwiller* and *E. H. Graves,* for appellee.

ENLOE, J.—This was an action to recover damages for an injury alleged to have been sustained when appellee's horse became frightened at an approaching train of appellant, while crossing the tracks of appellant, in the city of Hartford City. The complaint was in two paragraphs, to each of which demurrers were filed and overruled, and appellant then answered in general denial.

The first and second assigned errors are that the

court erred in overruling the demurrers to the separate paragraphs of the complaint.

In its brief filed, and also in the oral argument had in this court, appellant, with great earnestness, insisted that neither of said paragraphs is sufficient to state a cause of action. The paragraphs are of some length, but we here set out the averments of the first paragraph, so far as said averments are material to the matter urged against the sufficiency of said paragraphs, said averments being as follows:

"That on the 29th day of May, 1915, and for a long time prior thereto the said defendant was the owner of and operated a railroad extending from Union City, Indiana, to Marion, Indiana, and through the county of Blackford in said State, and through the city of Hartford City, in said county, and over and across Washington Street, in said City of Hartford City, Indiana; that said Washington Street, on said 29th day of May, 1915, at the time of the injury hereinafter complained of and for a long time prior thereto extended east and west through said city, from the west corporation line to the east corporation line thereof, and past the public square therein, and through the main business section of said city, and was a much used and traveled street, being the main thoroughfare and avenue of ingress and egress into and from said city from the west.

"That the tracks of said defendant's railroad where the same crossed said Washington Street as aforesaid, crossed the same in a northwesterly and southeasterly direction, at an angle of about 45 degrees and extended or run in that direction and upon that angle to the northwest a distance of about 20

rods from said crossing where the same turned abruptly to the west.    *    *    *

"That on said day and for a long time prior thereto the said defendant company owned, maintained and used over and across said Washington street, at said crossing, five separate tracks, on the grade line of said street,—two main tracks, and three sidetracks or switches,—all of which extended and run across said street at an angle and in the direction aforesaid, parallel with each other, and about six feet apart, all of which were used during all of said time and on said day were being used by said defendant company in the operation of its said railroad trains, cars and locomotive engines.

"That on said day and for a long time prior thereto the buildings of the factory of The Johnston Glass Company occupied the ground immediately west and south of the tracks aforesaid of said defendant company and immediately north of said Washington street, and said defendant company maintained and used for its said cars and locomotive engines a switch connected with its said tracks at a point about 60 feet west of said crossing and extending directly westward parallel with said Washington street to and beyond said factory buildings of the said The Johnston Glass Company.

"That at said time and for a long time prior thereto said defendant company kept and maintained a switching engine and crew at said city of Hartford City, Indiana, which switching engine said defendant company caused to be operated by its employees or crew back and forth upon and over its said tracks and over and across said Washington street, and by reason of the facts aforesaid, and the further facts that defendant's said trains, cars, locomotive engines and

said. switch engine was frequently passing and re-passing over and across said street upon defendant's said tracks during each day, said crossing was a dangerous crossing, and by reason thereof said defendant company upon said 29th day of May, 1915, had, and for a number of years prior thereto had kept and maintained thereat a watchman or flagman for the purpose of notifying persons along said Washington street and over and across said crossing of danger, and when it was safe, and when it was not safe for them to pass or attempt to pass over and across said crossing and tracks, and had erected and maintained, and on said day was maintaining, a small house or booth for the use of such watchman or flagman, at a point immediately west of said tracks and south of said street, upon its right of way, all of which the plaintiff on said day knew. * * *

"That at said time some of defendant's cars were standing upon the east end of the switch leading to the Johnston Factory buildings as aforesaid, and a cut of cars, of said defendant, was standing upon one of defendant's tracks aforesaid north and west of crossing, a distance of about 75 feet and north of where plaintiff and his said buggy was located and by reason thereof and of said factory buildings, plaintiff's view of defendant's said tracks to the north and west was completely cut off and obstructed, and at said time he was unable to see and did not see, by reason thereof, but a very short distance to the north and northwest. That after said freight train had passed and while he and his rig was still standing west of said tracks and while defendant's said switch engine was approaching said crossing from the north-west, unobserved by this plaintiff by reason of the obstructions aforesaid and unheard by this plaintiff,

defendant's said watchman or flagman, who was then and there in the employ of said defendant, and acting within the scope of his said employment, and standing at or near his said house or booth, and knowing of the approach of said switch engine, negligently, carelessly and recklessly, signalled with a flag, which he held in his hand, to this plaintiff, that there was no danger, and by waving the same from the west to the east, a number of times signalled plaintiff, for him, the said plaintiff, to come upon said tracks and to cross over said crossing, although he, the said watchman, then and there well knew, or could have known, that said switch engine was at that time only a short distance away and approaching said crossing at a rapid rate of speed from the northwest, and that the same would cross said crossing, and plaintiff says that when the said defendant's said watchman gave him the signal as aforesaid, to cross as aforesaid, before doing so, he looked and listened, and being unable to see or hear said switch engine and seeing or hearing no danger, and relying upon said watchman and his signal as aforesaid, he drove his said horse and buggy upon said track and attempted to cross over said crossing to the east in a careful and cautious manner.''

The second paragraph is essentially like the first, except that it has the additional averment charging failure to sound whistle or ring bell as engine approached this crossing.

These paragraphs are assailed upon the alleged ground that the facts averred *do not show any duty* resting upon appellant to the appellee as a traveler upon the highway about to cross said tracks. If the facts averred do not show *any legal duty* owed by appellant to appellee as a traveler upon said highway,

about to cross the tracks of appellant, then the objection of appellant is well taken.

There is no statute requiring the placing of a watchman or flagman at highway crossings and no ordinance of the city of Hartford City pleaded showing any such duty; therefore, it becomes pertinent to inquire whether there is any such duty at common law and, if so, when and under what circumstances.

In 7 Broom, Legal Maxims (7th ed.) 281, it is said: "Every man is restricted against using his property to the prejudice of others; the principle embodied in the maxim *sic utere tuo ut alienum non laedas,* applies to the public in at least as full force as to individuals." On page 284 it is said: "The operation being a hazardous one, the defendant was bound to see that it was carried out with reasonable care and skill."

In the case of *Ives* v. *Grand Trunk R. Co.* (1887), 35 Fed. 176, tried in the Circuit Court of United States for Eastern District of Michigan, and which was a crossing case, the trial court charged: "So if you find that because of the special circumstances existing in this case, such as that this was a crossing in the city much used and necessarily frequently presenting a point of danger, where several tracks run side by side, and there is consequent noise and confusion and increased danger; that owing to the near situation of houses, barns, fences, trees, bushes or other natural obstructions which afforded less than ordinary opportunity for observation of an approaching train, and other like circumstances of a special nature, it was reasonable that the railroad company should provide special safeguards to persons using the crossing in a prudent and cautious manner, the

law authorizes you to infer negligence on its part for any failure to adopt such safeguards as would have given warning, although you have such a statute in Michigan which undertakes by its provisions to secure such safeguards in the way the statute points out. The duty may exist outside the statute to provide flagmen or gates or other adequate warnings or appliances, if the situation of the crossing reasonably requires that—and of this you are to judge—and it depends upon the general rule that the company must use its privilege of crossing the streets on its surface grade with due and reasonable care for the rights of other persons using the highway with proper care and caution on their part.

"So if you find that the train hands kept no proper lookout and managed the train without due caution and reasonable care, you will be authorized to infer negligence on the part of the company as one of the facts established in the case."

This instruction was approved by the United States Supreme Court, in *Grand Trunk R. Co.* v. *Ives* (1892), 144 U. S. 408, 12 Sup. Ct. 679, 36 L. Ed. 485, the court saying: "That this instruction is in harmony with the general rule of law obtaining in most of the states, and at common law, we think there can be no doubt."

The court then quotes, with approval, from the case of *Central Passenger R. Co.* v. *Kuhn* (1888), 86 Ky. 578, 6 S. W. 441, 9 Am. St. 309, as follows: "The doctrine with reference to injuries to those crossing the track of a railway, where the right to cross exists, is that the company must use such reasonable care and precaution as ordinary prudence would indicate. This vigilance and care must be greater at crossings in a populous town or city than at ordinary crossings in the country; so what is reasonable care and pru-

dence must depend on the facts of each case. In a crossing within a city, or where the travel is great, reasonable care would require a flagman constantly at the crossing, or gates or bars, so as to prevent injury; but such care would not be required at a crossing in the country where but few persons passed each day.''

In commenting upon the respective rights and duties of the railroad company and travelers upon the public highway, Shaw, C. J., in case of *Shaw* v. *Boston, etc., R. Corp.* (1857), 8 Gray (Mass.) 45, said: ''The duty, therefore, which the parties in such case owe each other, is to take all reasonable precautions, and use all proper skill and care, in crossing this intersecting part, and in approaching thereto, so as not to come to the intersecting point at the same time; in other words, not to come into collision. The plaintiff, therefore, in order to maintain her action, must show that she was using proper precaution, and all due care and diligence, at the place of crossing, and in approaching thereto; that the defendant corporation, their officers, agents or servants, did not use proper precaution and due care and diligence, in * * * conducting and managing their train, and such as was reasonably necessary for the safety of passengers, at the place of intersection, and such as men of ordinary prudence, skill and experience would use in like cases, by means of which neglect or failure the collision ensued.''

In the case of *Linfield* v. *Old Colony Corp.* (1852), 10 Cush. (Mass.) 562, 57 Am. Dec. 124, and which was an action for personal injuries sustained at a grade crossing of defendant's track and a public highway, it was insisted that as defendant company had com-

plied with the statute as to ringing the bell, etc., before reaching the crossing, there was no liability, but the court said, on page 569: "Railroad corporations are bound to use all reasonable care, besides that of ringing a bell, etc., as directed by the statute, to avoid collision when their engines are crossing a turnpike or other way."

In the case of *Chicago, etc., R. Co.* v. *Still* (1858), 19 Ill. 499, 508, 71 Am. Dec. 236, Walker, J., said: "Railroad companies, in operating their cars, must be held, in crossing public highways and thoroughfares, to so regulate the speed of their trains, and to give such signals to persons passing, that all may be apprised of the danger of crossing the railroad track. And they should also keep a lookout, so as to see, and, as far as possible, prevent injury to others exercising their legal rights. A failure in any of these duties, on their part, should render them liable for injuries inflicted, and for wrongs resulting from its omission."

In the case of *Chicago, etc., R. Co.* v. *Gretzner* (1867), 46 Ill. 74, 84, Breeze, C. J., commenting upon the doctrine as laid down in the Still case, *supra,* as being a salutary one, further said: "If this be required at the crossing of a railway with a common country road, is it not reasonable that a greater amount of vigilance should be exercised when the crossing is a great thoroughfare of a populous city, where persons, animals and vehicles were passing with slight intermissions? When railways cross public streets on the same level, there is very great exposure to accidents of this nature, and consequently great vigilance is demanded by those attempting the crossing, and the use of all proper precautions."

In the case of *Chicago, etc., R. Co.* v. *Perkins*

(1888), 125 Ill. 127, 17 N. E. 1, which was a crossing case, it appeared that the Illinois statute provided: " 'In all cases where the public authorities having charge of any street over which there shall be a railroad crossing, shall notify any agent of the corporation owning, using or operating such railroad, that a flagman is necessary at such crossing, it shall be the duty of such railroad company, within sixty days thereafter, to place and retain a flagman at such crossing, who shall perform the duties usually required of a flagman,' etc." It appeared that the railroad company had never been notified that a flagman was necessary at the crossing in question, and it was urged that the court erred in allowing the plaintiff to prove that no flagman had been stationed at the crossing. The court, by Mr. Justice Craig, in discussing the proposition said: "If a railroad company, in the running of its trains, had no duty to perform except what the legislature might prescribe, the position of counsel might be well taken; but such is not the case. A railroad company, in the running of its trains, is required to use ordinary care and prudence to guard against injury to the person or property of those who may be traveling upon the public highways and are required to cross its tracks, whether required by the statute or not. The fact that the statute may provide one precaution, does not relieve the company from adopting such others as public safety and common prudence may dictate." Citing *Shaber* v. *St. Paul, etc., R. Co.* (1881), 28 Minn. 103, 107, 9 N. W. 575.

In the case of *Continental Improvement Co.* v. *Stead* (1877), 95 U. S. 161, 24 L. Ed. 403, which was an action for damages for injuries alleged to have

been sustained at a highway crossing near the village of Lima, LaGrange county, Indiana, and which case was brought and tried in the circuit court of the United States for the District of Indiana, the trial judge had charged the jury as follows: "That both parties were bound to exercise such care as, under ordinary circumstances, would avoid danger; such care as men of common prudence and intelligence would ordinarily use under like circumstances; that the amount of care required depended on the risk of danger; that, where the view was obstructed so that parties crossing the railroad could not see an approaching train, the exercise of greatest care and caution was required on both sides; as well on the part of those having the management of the train as of those crossing the railroad; that the former should approach the crossing at a less rate of speed, and use increased diligence to give warning of their approach; * * *."

This instruction was excepted to, and on appeal Justice Bradley, in delivering the opinion of the court, said concerning this charge: "We think it is in accordance with well-settled law and with good sense. If a railroad crosses a common road on the same level, those traveling on either have a legal right to pass over the point of crossing, and to require due care on the part of those traveling on the other, to avoid a collision. Of course, these mutual rights have respect to other relative rights subsisting between the parties. * * * It is the duty of the wagon to wait for the train. The train has the preference and right of way. But it is bound to give due warning of its approach, so that the wagon may stop and allow it to pass, and to use every exertion to stop if the wagon

is inevitably in the way. Such warning must be reasonable and timely.''

The doctrine of the foregoing cases has been recognized and declared to be the law in this state. *Bellefontaine R. Co.* v. *Hunter, Admr.* (1870), 33 Ind. 335, 5 Am. Rep. 201.

From the foregoing authorities it clearly appears that whenever, in the exercise of due care and caution in running its trains, it becomes reasonably

1. necessary, considering the nature, location, and surroundings of a crossing of railroad and public highway or street, that a watchman should be placed at such crossing to give notice to travelers of approaching danger, and to signal to them when it will be reasonably safe for them to make such crossing, it is the duty of such railroad corporation, independent of any statute or ordinance in that behalf, to place a flagman at such dangerous crossing to perform said duties; and, these duties being duties owed by the railroad company to such travelers upon such street or highway, it necessarily follows that negligence of the flagman as to such duties is the negligence of the master.

In the cases above cited it was left to the jury to say whether the facts were proved and whether, under the circumstances and surroundings of each individual crossing, a flagman was reasonably necessary to protect and warn travelers. In the instant case the number of tracks, their direction, the obstruction to view of a train approaching from the northwest, the use of the crossing by switching crew, frequently passing and repassing over the same, the fact that the street in question was a main thoroughfare and much traveled, made this crossing, the above facts

being true, a crossing of more than ordinary danger, and we think that from the above facts a jury would have been warranted in finding that the presence of a flagman at this crossing was reasonably necessary to warn travelers as to danger from approaching trains.

In this case it further appears from the averments of each paragraph of complaint that there was, and had been for a number of years, a flagman at 2.  this crossing, placed there and kept there by the railroad company, appellant. This was a plain, positive, and unequivocal recognition by appellant that this crossing was an unusually dangerous one, and that the services of such flagman at that point were reasonably necessary to protect persons, travelers on said street, using said crossing. *Cleveland, etc., R. Co.* v. *Harrison* (1912), 178 Ind. 324, 98 N. E. 729.

This flagman was there as the servant of defendant, performing the duties of a flagman at this crossing, discharging a duty which his master owed to travelers—that of reasonable protection. That there 3.  is no statute or ordinance requiring his presence there, under the averments of this complaint, as to surroundings and dangers, becomes immaterial, the defendant having placed him there, and we can give but little heed to any insistence by appellant that such flagman was not there to discharge a legal duty owed by appellant to those who might need to travel said street.

What we have said as to placing a flagman also applies to the giving of signals by those in charge of an engine or train when approaching a street 4.  or highway crossing. If ringing of bell or

other signal is reasonably necessary to warn travelers so that they may avoid danger, then such signal as is reasonably necessary should be given whether the same is or is not required by statute or ordinance.

As to the right of appellee to act on the signal of the flagman to cross, our Supreme Court has said that such invitation or direction of the flagman was

5.  an assurance of safety on which the appellee had a right to rely. *Cleveland, etc., R. Co.* v. *Harrison, supra; Louisville, etc., R. Co.* v. *Schmidt* (1897), 147 Ind. 638, 46 N. E. 344.

We think each paragraph of this complaint good, and this holding disposes also of the fourth assigned error in overruling motion in arrest of judgment.

The remaining assigned error calls in question the correctness of the action of the trial court in overruling appellant's motion for a new trial.

Appellant has assigned as reasons for a new trial: That the verdict is not sustained by sufficient evidence; that the verdict is contrary to law; that the damages are excessive; and that the court erred in giving certain instructions; and also erred in refusing certain instructions tendered by the appellant.

There is ample evidence to sustain the verdict, and we do not think that the damages awarded are so excessive that we can say they are the result of passion or prejudice.

Appellant objects to instructions numbered 1, 3, 4, 5 and 6 of the instructions given by the court of its own motion. Also to instructions numbered 1, 3, 4, 6, 7, 9, 13 and 15 given by the court at the request of appellee.

Of the instructions given at the request of appel-

lee, No. 9, which is complained of, is a correct statement of the law as far as it goes, and it was 6. the business of appellant to request the court to amplify it if not satisfied therewith. *Cleveland, etc., R. Co.* v. *Harrison, supra; Newcastle Bridge Co.* v. *Doty* (1907), 168 Ind. 259, 79 N. E. 485. As to the other instructions we do not think they are fairly open to the criticism urged against them; and as to the instructions tendered and requested by appellant and refused, each and all of them were erroneous under the issues and evidence in the case, or so drawn that the giving thereof would only tend to confuse the jury, and therefore were rightfully refused.

We find no reversible error in this record, and the judgment is therefore affirmed.