## CRAPO v. HAZELGREEN, Drainage Commissioner.

(Circuit Court of Appeals, Seventh Circuit. April 8, 1899.)

No. 528.

1. JUDGMENT—EQUITABLE RELIEF AGAINST—SUFFICIENCY OF BILL.

A bill to enjoin the construction of a drainage ditch established by a judgment of a circuit court of Indiana in proceedings for that purpose, on the ground that such proceedings were void for want of notice to com-

plainant, is insufficient, unless it sets out the facts shown by the record in regard to such notice.

**2. DRAINAGE—PROCEEDINGS UNDER INDIANA STATUTE—JURISDICTION.**

In proceedings under the Indiana statute for the establishment of a drainage ditch, the statute (2 Burns' Rev. St. 1894, §§ 5623, 5624) requires the filing of a petition, which shall describe the lands which it is believed will be affected, and give the name of the owner of each tract, if known, and, if unknown, shall so state, but shall be sufficient to give jurisdiction if the land is described as belonging to the person who appears to be the owner on the last tax duplicate or transfer of record. It further provides, after prescribing the notice to be given the owners named in the petition, for a reference to the drainage commissioners, who shall locate the ditch, assess benefits and damages, and report the same, and that as respects lands embraced in the report, but not in the petition, notice of the report and hearing thereon shall be given in the same manner as required on the filing of the petition. *Held*, that the requirements of the petition as to the description of lands and the naming of the owners, as well as to the notice required, apply equally to the report of the commissioners as to lands mentioned therein for the first time, and that where such a report for the first time described lands over which the ditch was located, naming as the owner one who was not the owner, and was not shown to be by the last tax duplicate or records, and no notice to the real owner was given as required, and he had no actual notice of the proceedings, such proceedings, as to his lands, were void for want of jurisdiction.

**3. SAME—NOTICE—CONSTRUCTION OF RECORD ENTRY.**

A court record, in drainage proceedings, which sets out the evidence on which a finding as to service on the parties was made, may properly be construed as excluding any other or different notice than that shown by such evidence.

Appeal from the Circuit Court of the United States for the District of Indiana.

This appeal is from an order dissolving a preliminary or temporary restraining order of injunction granted upon the bill, which was brought by William W. Crapo, as sole executor and trustee under the will of Edward D. Mandell, against the appellee, Henry S. Hazelgreen, who had been appointed commissioner for the construction of a drainage ditch in Lake county, Ind., known as the "Jarnecke Ditch," to obtain an injunction against proceeding with the proposed work. The injunction was asked on the ground that the proceedings in which the construction of the drain had been ordered, in so far as they affect the rights of the appellant, or of his testator, were void for want of notice, and because Mandell was not made a party to the proceedings. The averments of the bill which need be considered are the following: "* * * That said defendant claims the right to contract for the construction of and to construct said canal and ditch by virtue of proceedings in the circuit court of Indiana, originally commenced in the Lake circuit court of Lake county, Indiana, in September, 1892, and afterwards the venue thereof changed to Porter circuit court, and final judgment therein rendered in 1896, establishing a ditch to be constructed * * * as hereinbefore alleged; that neither the plaintiff herein nor the said Edward D. Mandell were parties to said proceedings for the establishment and construction of said canal or ditch, nor was any notice given to any of them as required by the statute of the state of Indiana under which such proceedings were had, nor any notice given under the statute of the said state of Indiana under which such proceedings were had which authorized the condemnation or taking of such lands of said Mandell, deceased, or the plaintiff herein, or any part thereof, for the purpose of said ditch, and that as to the said Mandell, deceased, and this plaintiff, said proceedings establishing said ditch were absolutely void, and that the said lands are not now, nor ever have been, in the possession of the said defendant, either in his individual capacity or as drainage commissioner; * * * that at the time

of the filing of said original petition, and for seven months prior thereto, the said lands of the plaintiff had been duly transferred upon the records of said Lake county to, and stood in the name of, said Edward D. Mandell, and during all of the said time, and up to the death of the said Mandell, in December, 1897, and ever since, the said lands have stood in the name of the said Mandell on the records of said Lake county, and were, in accordance with the laws of said state, duly entered upon, and stood in the name of the said Mandell upon, the tax duplicates, as well as all other records of said county, and the lands of the plaintiff were not described, nor was the name of the plaintiff, or Mandell, in whose name the said lands stood upon the tax duplicates and all the records of said county of Lake, mentioned or described, in said petition; that notice was given of the filing of the said petition, but neither the lands of the said plaintiffs described herein, nor the name of the said Mandell or of this plaintiff, were mentioned or referred to either in the petition or the notice given in pursuance thereof, nor were such lands described in any manner in such petition, nor was it stated that the name of the owner thereof was unknown, nor were the same referred to or described as belonging to the person who appeared to be the owner of the same according to the last tax duplicates or record of transfer kept by the section of the county where the same is situated; that an order was made referring the same to the drainage commissioners, and afterwards, in the year 1892, the drainage commissioners made a report locating and establishing said drain petitioned for upon the line and route petitioned for and described in the original petition in said cause; that afterwards said report so made by said drainage commissioners was set aside, and the same again referred back to the drainage commissioners; and thereafter, on the 22d day of April, 1895, the drainage commissioners filed a second report in the circuit court of Lake county, establishing the route of said canal or ditch as hereinbefore alleged; * * * that in said second report neither the name of said Edward D. Mandell nor of this plaintiff was mentioned therein; * * * that in said second report of said drainage commissioners is the only time or place in any of the proceedings in relation to said ditch that even the land, or any portion of the same, owned by the said plaintiff, is mentioned or described or referred to, and neither the name of the said Mandell nor the said plaintiff is mentioned as owner thereof; nor was it alleged that the name of the owner of such lands was unknown; nor was it described as belonging to the person who appeared to be the owner according to the last tax duplicate or record of transfer kept by the section of the county where the same is situated; * * * that no written or printed notice, or notice of any kind whatsoever, was given the owner or occupant of the plaintiff's land hereinbefore described, setting forth the route of such drain as described in the petition or in either of said reports, or the fact of the filing and pendency of such petition, and when the same was docketed, nor was any notice of the filing, pendency, and time fixed for docketing, or for the hearing of said petition or either of said reports, given, by posting up written or printed notices thereof at three public places in each township where the lands described in said petition are situated, and near the line of the proposed work, and one at the door of the court house in the county of Lake, in which said lands are situated, setting forth the route of such drain as described in either the petition or the report, and the fact of the filing and pendency of the petition and report, or either of them, and when the same was docketed, or the time for the hearing of the same. And the plaintiff avers that no notice whatsoever was served, given, posted, or published in accordance with the statute of the state of Indiana, or any notice of any kind or character whatsoever, subsequent to the filing of the second report of the said commissioners, which is the first and only report that locates the said proposed ditch, and upon the lands of the said plaintiff."

In support of the motion to dissolve, the following proofs were heard: It was agreed by the parties that in the second report of the commissioners, made on April 22, 1895, three 40-acre tracts of land of Edward D. Mandell, on which the ditch was located, were stated to be owned by Josephus Collett, to whom, and to other persons named, over whose land the ditch, as located, would pass, the commissioners reported, "We assess no damages or benefits." Upon the filing of that report the following entry was made:

"Comes again the Honorable George W. Burson, special judge herein, and come also the drainage commissioners herein, and they now file their repoit, showing the proposed work to be of public utility, the route, commencement, and terminus thereof, also the assessments of benefits to the lands affected, which also brings in new parties who have not been served with process herein, but who own lands that will be affected by the construction of the proposed work, which report is in the following words: (Insert.) * * * And the petitioners herein are thereupon ordered to give the notice required by law to said new parties brought in by the report, and this cause is continued until May 13, 1895."

On May 4, 1895, the following entry was made:

"Come again the parties, by counsel, * * * and thereupon come the petitioners, and show to the court that all new parties who were brought in by the report of the commissioners filed herein on April 22, 1895, have been duly and legally served with notice of the filing of said report, and that the same was set for hearing on May 13, 1895, and, in proof of such service, file herein the said notice, and return of the sheriff thereon indorsed, and also a copy of said notice, with the affidavits of Henry Bachman and T. S. Fancher thereon indorsed, which notice and said sheriff's return and said affidavits so thereon indorsed, respectively, are in these words: . (Insert.)"

The following is the notice referred to:

"To Josephus Collett, Edward B. Mandell, Joe R. Lane, Lucy S. Osborn, John B. Luther, Henry F. Pennington, Martha R. Hart, Frank Mathis, John Seeberger Estate, Ludwig Busse, and Frank Busse: You, and each of you, are hereby notified that we, the undersigned, and others, have filed in the Lake circuit court of the state of Indiana their petition for the drainage of the valley of the Little Calumet, in Lake county, Indiana, and that upon the same the drainage commissioners of said county have made their report, which is now on file in said court, in which you are named as persons whose lands will be affected by said proposed drainage, and that said report will be heard by said court upon the 13th day of May, 1895.

"John F. Jarnecke, by T. S. Fancher and J. Kopelke, His Attorneys."

The return of the sheriff showed service on parties not concerned in this litigation. The affidavits mentioned, of Bachman and Fancher, or copies thereof, were not produced; but Fancher's affidavit, made for use at the hearing. was read, showing that he posted at the door of the court house at Crown Point, Ind., on or about April 29, 1895, and more than 10 days before May 13, 1895, a notice like that on which the sheriff's return appears, and made a verified return, on a copy thereof, and filed the same in the clerk's office, with the papers in the case; that the notice so posted contained the name of Edward B. Mandell, the then owner of the property; that he found the notice served by the sheriff upon resident landowners, but that he had made diligent search for the notice, by himself and by Bachman, but could not find the same among the papers, nor any place where the same was on file. This was a very restricted search. Bachman's affidavit was also read, showing that he received the notice from the hands of Fancher on or about April 27, 1895; that he served the same upon three parties named, and posted "three copies of said notice in three separate places near the line of the ditch in the townships of North, Calumet, and Hobart, in Lake county, Indiana, being all the townships in which the lands are located that are reported benefited." The statute required three notices in each township where the lands described in the petition are situated, and the lands of Mandell were not reported as either benefited or injured.

Proof was made by the appellant that the lands had been transferred, and had stood in the name of Edward D. Mandell, as alleged in the bill; that neither Mandell, who lived in Massachusetts, nor his agent at Chicago in charge of the lands, ever in fact had notice or knowledge of the proceedings in question, and that at the time of the proceedings a part of the lands of Mandell, upon which the ditch is located, was occupied by Fredericka Fulgraf, and another part by John Scherevlin, as tenants of Mandell; and that no notice was served

upon either of them in relation to the ditch, or of the filing of either report by the drainage commissioners in relation thereto.

The statute under which the proceedings were had (2 Burns' Rev. St. 1894) contains the following provisions:

"Sec. 5623. * * * The petition shall describe in tracts of forty acres according to fractions of government surveys, or less tracts when they exist, and in Clark's grant and the French grant and all pre-emptions of Indian reservation in such tracts as are owned, the lands of others which it is believed will be affected by the proposed drainage, and give the names of the owners thereof, if known, and if unknown shall so state. * * * Such petition shall be sufficient to give the court jurisdiction over all lands described therein and power to fix a lien thereon, if they are described as belonging to the person who appears to be the owner according to the last tax duplicate or record of transfer kept by the section of the county where the same is situated.

"Sec. 5624. Whenever the petitioner or petitioners shall file their petition in the clerk's office of the circuit court, he or they shall fix and note thereon the day set for the docketing thereof, and shall give the owner or occupant of each tract of land described in said petition, who is a resident of the county or counties in which said land is situated, notice thereof by serving upon such owner or occupant a written or printed notice setting forth the route of such drain as described in the petition, the fact of the filing and pendency of such petition, and when the same shall be docketed, which notice may be served by the petitioner or petitioners, or either of them, or by any person for them, in the same manner as summons are served in civil cases; * * * and as to all owners of lands to be affected by such proposed drainage who at the time of filing the petition are non residents of the county or counties in which the lands to be affected are situated, notice of the filing, pendency, and time fixed for docketing of said petition shall be given by posting up written or printed notices thereof at three public places in each township where the lands described in said petition are situated, and near the line of the proposed work, and one at the door of the court-house of each of the counties in which said lands are situated, which notices shall be similar in form to those required to be served on resident land owners; and if it appears to the court that notice has been given of the filing of said petition by service of notice upon resident land owners, and by posting of notices as above provided not less than twenty days before the day set as the day for docketing the same, the court shall order the same placed on the docket of said court as an action pending therein. Any person named in such petition as the owner of land shall have ten days, exclusive of Sunday and the day of docketing such action, after such docketing to file with said court any demurrer, remonstrance or objection he may have to the form of said petition, or as to why said drainage commissioners or either of them, on account of their interest in said work, or kinship to any person whose lands are affected thereby, should not act in the matter. * * * If no such remonstrance shall be filed, and the court deems said petition sufficient, such court shall make an order referring the same to the drainage commissioners. * * * They shall make personal inspection of the lands described in the petition, and of all other lands likely to be affected by the proposed work * * * [and if they find certain facts as required] they shall proceed and definitely determine the best and cheapest method of drainage, the termini and route, location and character of the proposed work, and fix the same by metes and bounds, courses and distances and description, * * * assess the benefits or injury as the case may be to each separate tract of land to be affected thereby, * * * and make report to the court as directed under oath. * * * And provided, further, that in all cases where lands are named in said report as affected by such proposed work, which are not named in the petition, the court shall fix a time for hearing the report, and it shall be the duty of the petitioners, at their own cost, to give ten days' notice to the owners of such lands of the filing of such report in the same manner as is herein required to be given of the filing and docketing of the petition, which notice shall state the time for hearing such report, and in such case the court shall continue the hearing of said entire report until such notice has been given as last above provided. The same proceedings shall

be had in regard to such report as if all the lands mentioned therein and the owners thereof had been named in the original notice of the filing of the petition."

Walter Olds, for appellant.
J. Kopelke, for appellee.
Before WOODS and JENKINS, Circuit Judges.

WOODS, Circuit Judge, after making the foregoing statement, delivered the opinion of the court.

It is well settled by the decisions of the supreme court of Indiana that the averments of the bill to the effect that notice was not given according to law, or that no notice whatever was given, are insufficient and unavailing as ground for the relief sought. The circuit court in which the proceedings were had being a court of general powers, the presumption in favor of its jurisdiction in the particular case, notwithstanding it was a special statutory proceeding, will be conclusive against a collateral attack upon its judgment. When, therefore, it was sought to annul or to restrain proceedings to enforce the judgment in question on the ground that it is void for want of notice, it was not enough to allege that notice was not given according to law, or that no notice whatever was given. The bill should have stated what the record of the judgment assailed shows in respect to notice, so that it could be determined whether, upon the face of the record, the proceedings were valid; every fact, where the contrary did not appear, being presumed in favor of the jurisdiction. As stated in Long v. Ruch, 148 Ind. 74, 47 N. E. 156, "the circuit court being one of general jurisdiction, the presumption is that it had jurisdiction especially as to parties, until the contrary is made to appear." To the same effect, see Kleyla v. Haskett, 112 Ind. 506, 14 N. E. 387; Bailey v. Rinker, 146 Ind. 129, 45 N. E. 38. Containing as it does no averment of what the record of the proceedings in question shows on the subject, the bill before us does not present the question whether, for any reason, the notice actually given or attempted to be given, as shown by the record, was so far defective in respect to Mandell as to subject the proceedings to collateral attack by his executor. The bill does not aver that the lands of Mandell were occupied by tenants, nor that the occupants were not served with notice, nor does it state what the record shows concerning notice to occupants. For all that is alleged, the record may show a finding that the lands were unoccupied, or that there were occupants on whom proper notice had been served. In all these respects, in the absence of proper averment to the contrary, the presumption is in favor of the jurisdiction. If the bill had set out just what the record shows on the subject, whether evidence that there were tenants upon the land who were not given notice would have been admissible, and what the effect of the proof offered, would have been important questions; but, on the bill as framed, they do not arise. It remains, therefore, to consider only whether, as contended, no valid notice could have been given to Mandell, because he

93 F.—21

was not a party to the proceedings, and no action was pending against him, upon which notice could be based.

Mandell had no land within four miles of the drain proposed in the petition. He was not named, nor any of his land described, in the petition. He was named nowhere in the proceedings, except in the notice served by the sheriff on persons not here concerned, and in a like notice, copies of which were posted at the court-house door in Lake county, and at three places along the line of the ditch; and while the ditch as relocated is shown by the report of the commissioners to pass over three tracts of his land, without benefit or injury thereto, each tract is described as owned by Josephus Collett, a former owner, though the proper transfers had been made, and the title of record and the entries on the tax duplicates had long been in Mandell's name. The first section quoted of the statute requires that the petition shall describe the lands to be affected, by forty-acre tracts, or other subdivision specified, "and give the names of the owners thereof, if known, and if unknown shall so state"; but "such petition," it is further provided, "shall be sufficient to give the court jurisdiction over all lands described therein and power to fix a lien thereon, if they are described as belonging to the person who appears to be the owner according to the last tax duplicate." The next section, after prescribing the notice to be served or posted, authorizes a reference to the drainage commissioners, who are empowered to determine the method of drainage, the termini, route, and location of the work, to assess the benefits or injury to each separate tract of land to be affected, and to make report to the court. In respect to lands embraced in the report, but not named in the petition, it is added that the court shall fix the time for hearing the report; that the petitioners, at their own cost, shall give 10 days' notice to the owners of such lands of the filing (and of the time of hearing) of such report, in the same manner as is therein required to be given of the filing and docketing of the petition; that the court shall continue the hearing of the entire report until such notice has been given; and finally that "the same proceedings shall be had in regard to such report as if all the lands mentioned therein and the owners thereof had been named in the original notice of the filing of the petition." It is to be observed that many requirements of the statute in respect to lands described in the petition are not expressly repeated in respect to lands first mentioned in the report of the commissioners. In the petition, for instance, the description must be by forty-acre tracts, while in respect to lands of the other class the only requirement is that the commissioners shall "assess the benefits or injury as the case may be to each separate tract of land to be affected." In the petition, too, the name of the owner, if known, must be given, and if, not being known, it is given according to the last tax duplicate, it will be enough to confer jurisdiction; but there is no express requirement that the commissioners shall report the names of the owners, if known, or according to the tax duplicate, if unknown, of lands included in the report which were

not included in the petition. So, too, written notice is required to be given to resident owners or occupants of lands described in the petition, and to nonresident owners by posting written or printed notice; but, in respect to lands first mentioned in the report, nothing is said of occupants or of tax duplicates, the provision being simply that notice shall be given to the owners of such lands of the filing of the report in the same manner as is therein required to be given of the filing and docketing of the petition. Other differences might be pointed out.

The argument of the appellant, in substance, is that the whole statute must be construed together; that, by fair construction, the report of commissioners is the foundation of the action, as regards new parties, constituting the declaration or complaint against them, as the petition is the complaint and declaration, and the foundation of the action against those named in it, and hence the report must show the same facts concerning new parties as the petition must show against original parties,—that is to say, "it must describe their lands by forty-acre tracts or less and must name the owner of each tract, or if the name be unknown it must be so stated and [each tract] must be alleged to be the land of the person in whose name it stands upon the last tax duplicate or transfer book of the county." In fortification of this argument, it is urged that but one mode is recognized in Indiana for the commencement of an action by one person against another; that section 316, 1 Burns' Rev. St. 1894, provides that a civil action shall be commenced by filing a complaint, and causing the summons to be issued, or publication to be made in proper cases; that the statute by which these proceedings were authorized was intended to be, and is, in harmony with the general provision, the petition being required to name the parties concerned, and it being permitted to bring in new parties, when found necessary, by the report of the commissioners, operating for that purpose as an amendment of the petition, and therefore required, by fair implication, to show the facts essential to jurisdiction over the new parties, which the petition was required to show in order to establish jurisdiction over the original parties. In the opinion of the supreme court of Indiana in Young v. Wells, 97 Ind. 410, expressions were used which lend support to this construction; but the question was not directly involved in the case, and the opinion can be said to contain no more than an intimation on the subject. Counsel for appellee, on the contrary, after emphasizing the differences between the provisions of the statute touching lands described in the petition and those first brought in by the report of the commissioners, insist that the commissioners "do not deal with the parties, but with the lands to be affected; that, when they undertake to name the owners of the tracts of land reported by them as affected, they go beyond what the statute contemplates, and that portion of their report may be rejected as surplusage"; that when, in this instance, they made the mistake of naming Collett, instead of Mandell, as owner, it was an unauthorized act, for which the petitioners car-

rying on the proceedings were not responsible, and should not suffer; that it is not the business of the commissioners to examine tax duplicates and transfer books for the names of owners, but simply to determine and describe the lands to be affected, and that only when the report is made does it become the business of the petitioners to find out, by an examination of the records, as in the first instance, who are the owners of the new lands brought into the proceedings by the commissioners' report, and give them notice, and that a notice which names an owner whose land has been so described, when given as required by the statute, makes the owner a party to the proceedings, though he be not otherwise named; and that the finding of the court that such notice had been given is conclusive against collateral attack, even though the notice was in fact defective. An argument in support of this construction of the statute is drawn from the phrase, "the lands mentioned therein and the owners thereof," found in the last clause of the section. That expression, it is said, assumes that the lands are mentioned, as before they are required to be named, in the report, but puts the owners in a different category, since they need not be mentioned in the report, but must, of course, be named in the notice. It is urged further, and Dukes v. Working, 93 Ind. 502, is cited in support of the proposition, that a drainage proceeding is not a civil action, but a special statutory proceeding, which is not so much in personam as in rem, and that a petitioner does not have to search for the owner of lands affected, outside of the tax duplicate and record of transfers. This argument does not seem to us to be convincing. While, in a general sense, it is doubtless true that a petitioner, who has no knowledge or notice of the actual ownership, need not look beyond the tax duplicate, he is required by the terms of the statute to take cognizance of an owner in possession; and we are of opinion that the word "occupant," as used, includes a tenant or licensee occupying in subordination to the owner, and that notice is required to be given to an occupant, not simply that he may have an opportunity to defend his own right, but also for the benefit of the owner, to whom it was assumed by the lawmaker that the occupant, if in possession under the owner, would communicate the notice served upon himself. The better construction of the statute in respect to jurisdictional requirements seems to us to be that the name of the owner—actual, if known, or as shown by the tax duplicate if not known—shall be set out in the report of the commissioners in connection with each tract of land included which had not been described in the petition. The report in this case was prepared upon that theory, under the supervision, presumably, of the petitioners or their counsel. If it was not the business of the commissioners to search the duplicates or other sources of information for the names of owners, as it certainly was their duty to find out the proper description of lands to be affected, it was the right and duty of the petitioners, who instituted and had control of the proceedings, to see that the names were furnished; and, if a mistake in that respect was made, the responsibility for the error was theirs, and they should not escape the consequences at

the expense of an adversary, who confessedly had no actual notice of what it was proposed to do, and had the right to rest in the assurance that his property could be taken or affected by such a proceeding only by due process of law. To say that there was due process of law in this case, it seems to us, would be little less than a mockery.

If regard be had to the evidence beyond the averments of the bill, the record of the proceedings in the drainage case, and the other proofs offered, which in no sense contradicted anything stated in that record, show that the notice required by the statute was not given. There was no finding by the court that notice in any form was served upon or given to Mandell. When the report of the commissioners was filed, a finding was entered to the effect that the report brought in new parties, and it was ordered that notice should be given to them as required by the statute. But Mandell was not one of the parties referred to. His name was not in the report, and was not mentioned in the finding; and the further finding, entered some days later on proof of service, was "that all new parties who were brought in by the report of the commissioners * * * have been duly and legally served with notice of the filing of said report and that the same was set for hearing," etc. That finding does not include Mandell, because he was not brought in or made a party by the report. The entry proceeds to set out the evidence on which the finding was made, consisting of the sheriff's return, which does not mention Mandell, and the affidavits of Bachman and Fancher; showing that copies of a notice, addressed to Josephus Collett, Edward B. Mandell, and nine others named, were posted at the door of the court house in Lake county, and at three places in three townships named, near the line of the proposed ditch. It is the evident meaning of this entry that there was no other proof of notice than that stated, and, as that does not show compliance with the statute, it might be said that the record itself shows that the requisite notice was not given, even if it were conceded that a mere description of land in the report of commissioners, coupled with the name of another as owner, is sufficient to justify judgment against the true owner upon proof of posting the notices required by the statute, and that, too, when there were tenants upon the land to whom no notice was given. The order appealed from is reversed, with direction to reinstate and continue in force pending the suit the restraining order which was dissolved.

Judge SHOWALTER participated in the hearing, but not in the decision, of this case.