Sisk v. Crump.

No. 13,573.

Sisk v. Crump.

NEGLIGENCE. — *Barbed Wire Fence Along Highway.* — *Liability of Land-Owner.*—The act of a land-owner in erecting upon his property, and along the line of a public highway, a barbed wire fence, does not in itself render him liable to one who sustains an injury therefrom, but there may be a liability if the fence is constructed and maintained in such a manner as to constitute negligence and a breach of duty owed to others or to the community.

SAME.—*Injury to Animal Wandering Upon Highway.*— *When Owner May Recover Damages.*—Where an order has been made by the proper authorities permitting horses and cattle to run at large, a land-owner, who negligently constructs and knowingly maintains in such a manner as to be dangerous, and in effect a trap, a barbed wire fence between his pasture-field and the adjacent highway, is liable for the value of a horse which,. while feeding along the highway, is attracted by other horses within the field and by the growing grass therein, and in attempting to enter· the enclosure becomes entangled in the wires and is killed.

From the Bartholomew Circuit Court.

*F. T. Hord* and *M. D. Emig,* for appellant.

*W. F. Norton* and *S. W. Smith,* for appellee.

ELLIOTT, J.—Stated in a condensed form, the material allegations of the appellant's complaint are these: On and prior to May 5th, 1885, the appellee owned fifteen acres of land, bounded on the east by a public street of the city of Columbus, and along the line of this street he had constructed a barbed wire fence. The fence was composed of wooden posts and five strings of barbed iron wire. It was negligently constructed; the posts being insufficient to keep the wire at a proper tension, and the wires were not drawn into proper position. The wires were armed with sharp iron barbs placed along them at a distance of two inches apart. They were negligently suffered to sag down near the ground. They hung loosely from the posts, and in such a condition as that a horse coming in contact with them would be en-

tangled and thrown down. The fence was not such as a good husbandman would construct or maintain, but was insufficient and dangerous, its height not being sufficient to keep off horses or cattle, and there being no plank or other thing to warn them of the existence of the fence. The fence could have been made safe by placing a board along the top of it, and the wires could have been kept at a proper height and tension, but the defendant, knowing its dangerous condition, suffered it to remain insufficient to warn off animals. It was not sufficient in height, as the defendant knew, to prevent animals from attempting to cross it. On the 5th day of May, 1885, the horse escaped from the stable of the plaintiff, in which it had been fastened, and, without fault on her part, wandered upon the street bounding the defendant's land. At that time the land was covered with green grass, on which the horses of the appellee were feeding. The appellant's horse was attracted by the green pasture and the horses feeding on it, and attempted to cross into the field. In attempting to cross the fence it was, by reason of the dangerous and unsafe condition thereof, entangled in the loose wires, thrown down and killed. The proper county and city officers had, by orders duly made, authorized owners of horses and cattle to permit them to run at large.

The complaint can not be upheld on the ground that erecting a barbed wire fence along the line of a highway, but on private property, is in itself an actionable wrong. The courts can not say, as matter of law, that erecting such a fence is a tort. We can not, therefore, yield to the contention of counsel that the act of an individual in erecting a fence of that kind in itself renders him liable to one who sustains an injury. Courts can not judicially know that such a fence is dangerous. Our statute recognizes the right to use such fences, for it is expressly provided that railroad companies may use them in fencing their tracks. Act of 1885.

The complaint before us, however, does not rest solely on the theory that the erection of a barbed wire fence is neces-

sarily a tort. It goes much further, and, with great particularity, avers that the fence was so constructed as to be dangerous to horses and cattle passing along the highway. Nor does it stop there. It avers that beyond the fence was growing grass, on which horses were feeding, and that these things would attract horses and induce them to attempt to cross the fence and enter the enclosure. There are, therefore, two important elements to be considered :

1st. The negligence in constructing and knowingly maintaining a dangerous fence along the line of a highway.

2d. The probability that animals would be attracted by what they saw within the enclosure, and would probably attempt to enter it.

These two elements exert an important influence upon that branch of the case which presents the question whether the appellee's act was culpably negligent.

It is well settled that a lawful act may be done in such a negligent manner as to make the person who does it a wrong-doer. It may be, therefore, that although erecting a barbed wire fence is not in itself a tort, yet the manner in which it is constructed and maintained may be such as to make the person erecting and maintaining it guilty of negligence. A thing may not · be dangerous if properly constructed, but dangerous if improperly constructed. The complaint before us shows that the appellee was negligent in constructing and maintaining the fence, and on that point we have no hesitation in declaring it to be sufficient.

Negligence is not always actionable. A man may do many negligent things on his own premises and yet not incur any liability. Negligence is only actionable where it involves a breach of duty. This rule is illustrated by the cases which hold that there can be no recovery for injuries caused by the negligence of the owner of land in suffering the premises to become unsafe, unless the injured person came on the land under an express or implied invitation. Nave v. Flack, 90 Ind. 205 (46 Am. R. 205); Evansville, etc., R. R. Co. v.

*Griffin,* 100 Ind. 221 (50 Am. R. 783); *Indianapolis, etc., R. W. Co.* v. *Pitzer,* 109 Ind. 179.

There can, as a general rule, be no action, although there is negligence, unless the party guilty of negligence was under some duty to the person who sustains the injury.

While it is essential that the defendant should be under some duty to the plaintiff, it is not essential that the duty should be directly owing to him as an individual. A defendant who owes a duty to the community owes it, as a general rule, to every member of the community, and, if any member suffers a special injury from a breach of that duty, an action will lie. The pivotal question in this case, therefore, is, whether the defendant was under a general duty to maintain the wire fence so that it would not inflict injury upon animals which might be tempted from the highway into his enclosure?

The theory of the complaint is that the horse was injured while attempting to cross the fence into the defendant's enclosure, and not that it was injured while simply wandering along the highway. If the horse had been injured while going along the highway a very different question would have been presented; but that is not the case which the complaint undertakes to make. The case is, therefore, not governed by the authorities which hold that an action will lie against one who makes the use of a highway dangerous, and the cases of *Graves* v. *Thomas,* 95 Ind. 361 (48 Am. R. 727), and *Beck* v. *Carter,* 68 N. Y. 283 (23 Am. R. 175), are not in point.

The complaint does not aver that the fence was intentionally made dangerous for the purpose of injuring persons or animals that might trespass on the defendant's land. The cases which assert and extend the old doctrine that spring-traps and guns shall not be set to catch trespassers have no application, for here the negligence charged against the defendant is nothing more than the failure to exercise proper care in constructing and maintaining the fence. The cases

of *Hooker* v. *Miller*, 37 Iowa, 613, *Deane* v. *Clayton*, 7 Taunt. 489, and similar cases, can exert no influence upon this investigation.

The case of *Henry* v. *Dennis*, 93 Ind. 452 (47 Am. R. 378), does not belong to the same class as the present, for in that case the poisonous substance which caused the injury was placed in the street. Here the fence was on the defendant's own land, and the rule declared in the case cited can not apply.

The defendant did nothing to entice the plaintiff's horse to leave the highway. If the defendant had purposely placed feed near the highway, and thus tempted animals wandering along it to enter his enclosure, a different case would confront us; but, here, the land was covered with grass and herbage, the usual and natural growth of the season. Nature clothed the field with the grass, not the defendant.

At common law this action could not be maintained, because owners of animals are forbidden to allow them to run at large; but our statute changes this rule of the common law, and invests the board of county commissioners with authority to permit domestic animals to run at large. *Welch* v. *Bowen*, 103 Ind. 252.

The complaint avers that the proper order had been made, so that, in permitting the horse to wander upon the highway, the appellant was not guilty of any wrong.

The order of the board permitting animals to run at large forms an important element in the case, not only as bearing upon the question of contributory negligence, but also as bearing upon the question of the appellee's negligence. It bears upon the latter question, because it made it the duty of the appellee to take notice that horses and cattle might wander upon the highway, and with this knowledge he had no right to do anything that was reasonably certain to cause injury to animals passing along the highway. Knowing, as he did, that animals might lawfully wander along the highway, he owed a duty to the community to use ordinary care

to prevent any act of his from causing injury to animals wandering near his land.

"Enjoy your own property in such a manner as not to injure that of another person" is a maxim of the law that rules many cases, and we think it must rule the one at bar. The appellee had a right to select his own fence, but he had no right, under the circumstances stated in the complaint, to construct it so as to make it dangerous to animals passing along the highway, for, in doing so, he violated the maxim we have quoted. Suppose he had dug a deep trench along the line of the highway and had covered it with planks so thin as to give way beneath the weight of the smallest domestic animal, would he not be liable to the owner of a horse killed in attempting to cross the trench? Again, suppose that a land-owner places posts along the line of his land and attaches wires near the ground, where they would be hidden by the grass or weeds, would he not be liable to the owner for the value of a horse caught in the wires and killed? The case as made by the complaint is in principle the same as the cases we have given as illustrations.

The land-owner is not bound to maintain a secure fence, nor, indeed, any fence; but if he does undertake to maintain a fence along a highway he must not negligently suffer it to become dangerous to passing animals. His duty is to exercise reasonable care to prevent his fence from becoming dangerous, but it extends no further. If the fence he elects to build is built as such fences are usually built, there is no liability; but if it is allowed to get out of repair, and thus become essentially dangerous, he may be liable. He is not under any duty to place boards on the top of a wire fence, or to do any like act; but he is bound to use care to keep the fence from becoming a trap to passing animals.

It is the duty of land-owners to take notice of the natural propensity of domestic animals, and, under the allegations of this complaint, it was the duty of the appellee to take notice of the propensity of horses to seek the pasture within his en-

closure and join others of its kind feeding there.  In view of the facts that the board of commissioners authorized animals to run at large, that the appellee was chargeable with notice of this order, that he was bound to know that it was probable that animals wandering on the highway would seek his pasture, and that the fence was so maintained along the highway as to be in effect a trap to passing animals, we think the complaint must be held good.   These are the controlling facts, and they make the complaint good.   It is not the kind of fence selected, nor is it the absence of top planks or the like, that influences our judgment, but what chiefly influences it is this: the fence was so negligently maintained that, under the circumstances stated in the complaint, it was in effect a trap into which it was in a great degree probable that passing animals would be caught and injured.   Had the fence, although composed of barbed wires, been constructed and maintained as ordinarily prudent husbandmen usually construct such fences, our conclusion would be altogether different; but the complaint very clearly avers that it was not so constructed or maintained.  The appellant assumed all risks from fences, whatever their kind, constructed and maintained with ordinary care, but she did not assume risks from fences known to be intrinsically dangerous constructed along the line of a public highway.

We regard the location of the dangerous fence immediately along the line of the highway as an important element in the case.   The strong probability that the pasture within the enclosure, and the presence of other horses feeding there, would allure horses on the highway to enter it, rendered such a fence almost certain to injure passing animals.   This fact, considered in conjunction with the other facts to which we have especially directed attention, brings the case fully within the reasoning of the court in *Durham* v. *Musselman,* 2 Blackf. 96 (18 Am. Dec. 133), and directly within the decision in *Young* v. *Harvey,* 16 Ind. 314.

In the former case it was said: " If the injury is the natural

Sisk *v.* Crump.

or probable consequence of the act, and such as any prudent man must have foreseen, it is but reasonable that the perpetrator of the act should be held accountable for the injurious consequences. As, in the case of a man baiting his trap with flesh so near the highway, or the. grounds of another, that dogs passing the highway, or kept in another's grounds, are attracted into his traps, and thereby injured, he is liable for the injury. *Townsend* v. *Wathen,* 9 East, 277. In the second place, when the injury is accidental, the liability of the actor must depend on the degree of probability there was that such an event would be produced by the act."

In *Young* v. *Harvey, supra,* the horse of the plaintiff, wandering upon the streets and commons of a suburb of the city of Indianapolis, fell into an old well on the lot of the defendant, and it was held that an action would lie. This decision is strongly approved by a writer of excellent standing. 1 Thompson Neg. 300. The case has been approved in many subsequent cases. *Graves* v. *Thomas,* 95 Ind. 361; *Smith* v. *Thomas,* 23 Ind. 69; *Indianapolis, etc., R. R. Co.* v. *Wright,* 22 Ind. 376; *Howe* v. *Young,* 16 Ind. 312.

In *Jones* v. *Nichols,* 46 Ark. 207 (55 Am. R. 575), the defendant left open an unguarded excavation some distance from the highway, and the plaintiff's cow, which had been turned out upon the commons, fell into the excavation, and it was held that the action would lie.

Our ultimate conclusion is, that the facts stated in the complaint at least make a *prima facie* case, and that it is strong enough to drive the defendant to answer.

Judgment reversed.

Filed Dec. 6, 1887.