PITTSBURGH, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY v. NICHOLS, ADMINISTRATOR.

[No. 10,187. Filed April 5, 1921. Rehearing denied June 30, 1921. Transfer denied June 9, 1922.]

1. RAILROADS.—*Duty to Maintain Gates at Crossings.*—Whether a railroad company is under a duty to maintain gates at a highway crossing is a question of law. p. 370.

2. RAILROADS.—*Highway Crossings.*—*Duty to Maintain Gates.*— *Common Law.*—*Statutes.*—Neither §§5195, cl. 5, 5249 Burns 1914, §§3903, 3915 R. S. 1881, requiring a railroad company to construct its road across a highway in such a manner as to afford security for life and property and to restore the highway to its former state, nor the common law imposes upon such companies the duty to maintain gates at highway crossings. p. 370.

3. RAILROADS. — *Highway Crossings.* — *Care Required.* — *Jury Questions.*—*Negligence as to Travelers.*—The common law imposes on railway companies the general duty to exercise reasonable care and vigilance for the safety of travelers on highways over and across which their railroads have been constructed, and it is generally a question of fact for the jury whether that duty has been violated. p. 371.

4. RAILROADS.—*Highway Crossings.*—*Duty to Maintain Gates.*— In the absence of statutory requirement, amenable negligence cannot be predicated on the failure of a railroad company to maintain gates at a highway crossing unless the particular crossing is peculiarly hazardous. p. 371.

5. RAILROADS.— *Highway Crossings.*— *Jury Questions.*— *Negligence as to Travelers.*—*Failure to Maintain Gates.*—Whether

a particular railroad crossing presents such a peculiarly hazardous condition as that the absence of gates constitutes a violation of the duty to use due care may become a question for the jury. p. 371.

6. RAILROADS.—*Crossing Accidents.—Complaint.—Sufficiency.—Allegations of Character of Crossing.*—The complaint, in an action for death in a crossing accident predicating negligence on the absence of gates must aver the facts showing the conditions existing at the crossing involved so that the court may determine, in the first instance, whether the jury can legitimately draw the conclusion therefrom that a situation of such unusual peril and risk to travelers on the highway existed as to render the railroad company negligent in failing to maintain gates at the crossing. p. 372.

7. RAILROADS.—*Crossing Accidents.—Complaint.—Sufficiency.—Negligent Failure to Maintain Gates.*—In an action for death in a crossing accident in which negligence was predicated on the failure to maintain gates, a complaint merely avering that the railroad crossed the highway diagonally, and the view of a traveler on the highway was somewhat obstructed by trees and brush, but not alleging any facts showing that the crossing was peculiarly hazardous, is insufficient to charge actionable negligence based on the failure to erect and maintain gates. p. 372.

8. RAILROADS.— *Highway Crossings.— Maintenance of Warning Devices.—Common Law Duty.*—The common law does not impose on railway companies the duty to maintain at highway crossings such warning devices as sign-boards, electric bells, or gongs, nor is such duty imposed by statute. p. 373.

9. RAILROADS.—*Crossing Accidents.—Complaint.—Sufficiency.—Negligence.—Failure to Maintain Warning Devices.*—In an action for death in a crossing accident in which negligence was predicated on the failure to maintain warning devices, the complaint, which did not allege any order by the board of county commissioners under §5260 Burns 1914, Acts 1891 p. 364, requiring defendant company to keep a watch at the crossing, nor any facts showing that the crossing was peculiarly hazardous, *held* insufficient to charge negligence in failing to maintain devices to warn travelers on the highway of the approach of trains. p. 373.

10. RAILROADS.—*Crossing Accidents.—Operation of Trains.—Reliance on Ordinary Use of Tracks.*—Where a railroad is double-tracked, the company has the right to run trains either way on either track at its pleasure, and it owes to travelers on the highway no duty in that respect other than to exercise reasonable care. p. 374.

11. RAILROADS.—*Crossing Accidents.—Complaint.—Sufficiency.— Negligence.—Operation of Trains in Unusual Manner.*—In an action for the death of a traveler struck on a highway crossing at a place where the railroad was double-tracked, complaint *held* insufficient to charge negligence on the ground that the train striking decedent was proceeding on a track ordinarily used for trains going in the opposite direction. p. 374.

12. RAILROADS.—*Operation.—Rural Crossings.—Speed of Train.* —It is the general rule, in the absence of legislation regulating the speed of railway trains in rural districts, that a railway company has the right, as between it and travelers on the highway, to run its trains over country highway crossings at any rate of speed it may choose, subject to the common-law rule of reasonable care. p. 375.

13. RAILROADS.— *Operation.— Negligence.— Speed of Train at Rural Highway Crossings.*— Amenable negligence cannot be predicated solely and arbitrarily on the rate of speed at which a train passes over a rural highway crossing, although a particular crossing may be one of such peril to travelers on the highway that the rate of speed at which trains were operated over such crossing would constitute a violation of the railroad company's duty under the common law to exercise reasonable care. p. 375.

14. RAILROADS.—*Crossing Accidents.—Complaint.—Sufficiency.— Conditions at Rural Crossing.*—In an action for death in a crossing accident, the complaint must aver facts showing the conditions surrounding a rural crossing where it is alleged that the railway company operated its trains at. a negligent rate of speed. p. 375.

15. RAILROADS.—*Crossing Accidents.—Complaint.—Sufficiency.— Negligence.—Speed of Train.*—In an action for death in an accident on a rural highway crossing, the broad averment that "defendant carelessly and negligently ran its train" over the crossing "at a high and dangerous, reckless and unusual rate of speed of from sixty to seventy miles per hour," without alleging any facts showing that the physical conditions at and surrounding the crossing presented a situation so hazardous to travelers on the highway that the alleged rate of speed was incompatible with the exercise of due care, is insufficient to charge negligent speed. p. 375.

16. RAILROADS.—*Crossing Accidents.—Complaint.—Sufficiency.— Negligence.— Failure to Give Statutory Signals.— Statutes.—* In an action for the death of a traveler struck at a highway crossing, a complaint alleging that the train was operated at a dangerous, reckless and unusual rate of speed without sounding a whistle or ringing a bell, etc., *held* to state a ground of

Pittsburgh, etc., R. Co. *v.* Nichols, Admr.—78 Ind. App. 361.

amenable negligence under §§5431, 5432 Burns 1914, §§4020, 4021 R. S. 1881, and it is good as against demurrer for want of facts. p. 378.

17. PLEADING.—*Complaint.—Ambiguous Averments.—Motion to Make More Specific.—Motion to Strike Out.*—Where an averment of a complaint is sufficient to withstand demurrer, but is indefinite because ambiguous, a motion to make more definite and certain is the appropriate remedy, but where the averment is wholly worthless the appropriate method of attack is by motion to strike it out. p. 379.

18. PLEADING.—*Complaint.—Conclusions.—Averments that Acts Were Negligently Done.*—In an action for death in a crossing accident, an averment in the complaint that the train causing the death of plaintiff's decedent was negligently operated, etc., is an averment of fact, and not a conclusion, so that such averment cannot be attacked under §343a Burns 1914, Acts 1913 p. 850, providing that all conclusions stated in a pleading shall be considered the allegation of all facts required to sustain such conclusions when necessary to the sufficiency of the pleading, subject only to a motion to require such supporting facts to be pleaded. p. 379.

19. PLEADING. — *Complaint. — Theory. — Pleading Independent Acts of Negligence in Same Paragraph.*—A complaint should proceed on a single definite theory, and while, if two or more negligent acts or omissions are so related to, or dependent upon each other, that without the concurrence of all there would have been no injury, they may be combined in one paragraph, it is improper to combine two or more independent acts of negligence in the same paragraph of complaint, where any one of such acts, independently of the others, might have caused the injury. p. 381.

20. PLEADING.— *Complaint.— Theory.— Separate Acts of Negligence Pleaded in Single Paragraph.*—In an action against a railroad company for death in a crossing accident, a complaint alleging that the train was operated carelessly and negligently at a reckless and unusual rate of speed without any signal device, gates, or other means of warning travelers on the highway, and was operated without sounding a bell or whistle, or in any other manner warning travelers, *held* not open to attack on the ground that more than one act of negligence was combined in a single paragraph; the negligence relied on being the failure to give warning of the approach of the train under the conditions at and surrounding the crossing. p. 381.

21. RAILROADS.—*Highway Crossings.—Duty of Traveler on Approach of Train.*—Where a train and a traveler on the highway approach a crossing at the same time, it is not the duty

MAY TERM, 1922.     365

Pittsburgh, etc., R. Co. *v.* Nichols, Admr.—78 Ind. App. 361.

of the railway company to stop its train, but it is the duty of the traveler, in obedience to known custom, to stop and not attempt to pass in front of the approaching train. p. 383.

22. RAILROADS.—*Highway Crossings.—Travelers on Highway.— Approach of Trains.— Presumptions.—* A locomotive engineer may rely on the presumption that a traveler approaching a crossing will stop at a place of safety, and is under no duty to slacken the speed of his train. p. 383.

23. RAILROADS.—*Highway Crossings.—Duty to Avoid Injury to Travelers.—*If a railroad crossing is peculiarly hazardous, or if it is apparent that a traveler is unaware of his danger, or is unable to extricate himself therefrom, it is the duty of the railway company to exercise reasonable care by giving warnings, slackening the speed of the train, and taking such other precautions as the situation may require to avoid causing injury. p. 383.

24. TRIAL.— *Instructions.— Credibility of Witnesses.—* A statement in an instruction that in determining the credibility of witnesses and in weighing the evidence of the various witnesses, the jury might consider how far it was consistent with the ordinary conduct of men under the circumstances shown to surround the transaction, *held,* when considered in connection with the entire instruction, not objectionable on the ground that there was no evidence to show the ordinary conduct of men under the circumstances disclosed by the evidence. p. 384.

25. APPEAL.—*Review.—Presumptions.—Deliberation of Jurors.—* There is a presumption that jurors in weighing testimony will use their knowledge of human nature. p. 384.

26. APPEAL.— *Review.— Harmless Error.—Instructions.—Negligence.—*In an action for death in a crossing accident, an instruction that negligence in omitting to perform a duty required by law, or the failure to do something that a reasonably prudent person would do under the circumstances, objected to on the ground that a reasonably prudent person may act sometimes very imprudently, and that, in the absence of evidence on the subject, the instruction furnished no standard by which the jurors could determine whether there was negligence, *held* harmless. p. 385.

27. TRIAL.—*Instructions.—Railroad Crossing Accidents.—Negligence.— Proximate Cause.— Contributory Negligence.—* In an action against a railroad company for death in a crossing accident, an instruction that, before there could be a recovery, it must appear by a fair preponderance of the evidence that the railroad company was chargeable with one or more of the acts of negligence averred in the complaint, which act of negligence must have been the proximate cause of the injury, and

Pittsburgh, etc., R. Co. *v.* Nichols, Admr.—78 Ind. App. 361.

that there could be no recovery if decedent was guilty of contributory negligence, when considered in connection with other instructions as to the operation of the train, and the duty of those operating it to give warning signals, *held* not to constitute reversible error, though but one act of negligence was properly averred in the complaint.   p. 386.

28.   RAILROADS.—*Crossing Accidents.—Instruction.—Negligence. —Duty of Traveler at Crossing.*—In an action for the death of a traveler struck by a train at a crossing, an instruction that a traveler on a highway who is about to cross a railroad is required to exercise ordinary care, which concluded with the statement that it was the duty of a person approaching a railroad crossing, known to him to be dangerous, to exercise care commensurate with the known danger, was not objectionable as failing to inform the jury as to the duty of the traveler to exercise care commensurate with the known danger, especially as another instruction clearly and correctly set forth the rule as to the duty to stop, look and listen.   p. 387.

29.   TRIAL.— *Instructions.— Railroad Crossing Accidents.— Care Required of Traveler on Highway.*—In an action against a railroad company for the death of a traveler who was struck by a train on a highway crossing, an instruction that it was the duty of both parties to use reasonable care and precaution to avoid accident, and that it was the duty of the traveler to look out for the approach of trains and to observe all reasonable precautions before attempting to pass over the crossing, when considered with other parts of the instruction specifically stating the traveler's duty, *held* not objectionable as leaving the jury to determine what constitutes reasonable care.   p. 388.

30.   RAILROADS.—*Crossing Accidents.—Instructions.—Negligence. —Contributory Negligence.*—In an action against a railroad company for the death of a traveler on a highway crossing, an instruction that in determining the question of negligence or contributory negligence, the jury might consider the situation at and surroundings of, the crossing, and the traveler's familiarity with the crossing and running of trains, etc., *held* not erroneous, in view of the allegations of the complaint. p. 388.

31.   APPEAL.— *Review.— Instructions. — Negligence: — Speed of Train.*—In an action against a railroad company for the death of a traveler at a highway crossing, an instruction that the jury could not find the company guilty of negligence from the bare fact that the train involved was operated at a certain speed, but that they should take into consideration the circumstances, demands and necessities of the public generally, etc., is not objectionable on the ground that there was no evi-

dence as to the demands and necessities of the public, as the public necessity for rapid transportation is a matter of common knowledge. p. 389.

32. RAILROADS.— *Crossing Accidents.— Negligence.—Jury Question.*—In an action against a railway company for the death of a traveler in a crossing accident, the question of negligence on the part of the train crew, in view of the surroundings at the crossing, which was peculiarly hazardous, *held* under the evidence, for the jury. p. 390.

From Porter Circuit Court; *H. H. Loring,* Judge.

Action by B. F. Nichols, administrator of the estate of Joseph Ross Wilson, deceased, against the Pittsburgh, Cincinnati, Chicago and St. Louis Railway Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*G. E. Ross,* for appellant.

*Otto J. Bruce* and *C. H. Pendleton,* for appellee.

This action was instituted by appellee against appellant to recover damages for the death of Dr. Joseph Ross Wilson. So much of the first paragraph of the amended complaint as is necessary to an understanding of the questions presented is as follows:

"That the defendant operates a line of railway from Chicago to Logansport; that the defendant's said line of railway crosses a public highway between the towns of LeRoy and Hebron; that the said railroad runs on an angle from the north-west to the south-east and crosses the said highway at an acute angle; that on the 12th day of February, 1916, and for a long time prior thereto, at the said highway in question, the defendant carelessly and negligently failed and omitted to maintain gates to warn travelers upon said highway of the approach of trains thereon; that the defendant on said date, and for a long time prior thereto, carelessly and negligently failed to maintain any signal or warning device of any kind or description, to warn travelers upon said highway of the approach of trains; that Joseph

Ross Wilson was then and there traveling from the east, going west upon said public highway, and on that portion of the highway east of said railroad crossing; that said Joseph Ross Wilson was then and there traveling along slowly with due care and caution toward said railroad crossing; that the diagonal manner at which the defendant's railway crosses the said public highway causes the trains coming from the east to approach a person traveling west on said public highway from the left and rear of such traveler; that the view of a person traveling on said highway was also somewhat obstructed by trees and brush; that the said Joseph Ross Wilson with due care and caution on said day was crossing on and over the said railroad crossing; that said defendant then and there carelessly and negligently failed to operate any gates warning travelers of the approach of trains; that said defendant did then and there carelessly and negligently fail to operate any signal device warning travelers of the approach of said train; that said defendant did then and there carelessly and negligently operate a train going west on the south track, which was then and there the track used by east-bound trains; that the defendant has used the north track for west-bound trains and south track for east-bound trains for many years, which fact was then and there well known to the said Joseph Ross Wilson; that said action of said defendant company in then and there running its said train west on the south track was without notice or warning of any kind to the said Joseph Ross Wilson; that said defendant did then and there carelessly and negligently run and operate its said train at a dangerous, reckless and unusual rate of speed of from sixty to seventy miles per hour; and did then and there carelessly and negligently run and operate said train at said dangerous, reckless and unusual rate of speed without any signal device, gates, or other means

MAY TERM, 1922.     369

Pittsburgh, etc., R. Co. *v.* Nichols, Admr.—78 Ind. App. 361.

of warning travelers upon said public highway, and did then and there so operate said train as aforesaid without sounding a whistle or ringing a bell, or in any other manner warning persons traveling upon said highway of the approach of said train; that said defendant by said negligent means aforesaid did then and there carelessly and negligently run, operate and propel its said train on, across, and over said highway crossing where said Joseph Ross Wilson was then and there traveling with due care and caution; that said defendant did then and there carelessly and negligently by the negligent means aforesaid run said train against said Joseph Ross Wilson, then and there killing him; that said killing resulted wholly from said negligence and carelessness of the defendant as aforesaid, and not otherwise; that the said Joseph Ross Wilson was a physician and surgeon, residing and practicing his profession at Hebron, with a large and profitable practice of $4,000 a year; that he was 52 years of age; that he was a strong robust person in good health; that he left surviving him Ada Luella Wilson, his widow, dependent upon him for support; that said widow was and is damaged in the sum of $10,000."

The second paragraph of complaint is the same as the first with the following additional averments:

"That the defendant saw the deceased as he was about to enter upon said crossing or ought to have seen the deceased when he was about to enter upon said crossing, but said defendant did then and there carelessly and negligently fail to slacken the speed of said train and did then and there carelessly and negligently fail to take any precautions to avoid striking deceased; that if said defendant had then and there exercised due care and caution when defendant first saw or ought to have seen the deceased as he was about to enter upon said

crossing, defendant could have avoided any injury to deceased."

The defendant moved the court to require each paragraph of complaint to be made more specific in eighteen particulars, mainly "by alleging facts to show what duty the defendant owed to the decedent" with respect to each averment of negligence, and to show how the duty arose. The motions were overruled. The defendant then demurred to each paragraph for want of facts. The demurrers were overruled. Verdict and judgment for $3,500. The errors assigned and presented are the overruling: (1) The motions to make more specific; (2) the demurrers; and (3) the motion for a new trial.

DAUSMAN, P. J.—It appears from the first paragraph of complaint that the plaintiff relied on five acts of commission and omission as constituting negligence, and we will first consider the question of the sufficiency of the averment of each of them.

(1) "The defendant carelessly and negligently failed and omitted to maintain gates to warn travelers upon said highway of the approach of trains thereon."

Can it be said that the duty to maintain gates at that crossing rested upon the defendant? That question is one of law. 1 Thompson, Negligence §3; 6 Thompson, Negligence §7458 and authorities there cited; *Hulse* v. *N. Y., etc., R. Co.* (1893), 71 Hun. (N. Y.) 40, 24 N. Y. Supp. 512; *Purcell* v. *English* (1882), 86 Ind. 34, 36, 44 Am. Rep. 255; *Sisk* v. *Crump* (1887), 112 Ind. 504, 14 N. E. 381, 2 Am. St. 213; *Faris* v. *Hoberg* (1893), 134 Ind. 269, 33 N. E. 1028, 39 Am. St. 261; 1 Thornton, Negligence §2, and authorities there cited. The only statutory requirement relating to highway crossings is the general "covenant of the charter contract" to construct the railroad upon or across the highway in such manner as to afford security for life and property, and to restore the highway "to its

former state or in a sufficient manner not to unnecessarily impair" the usefulness or the franchises of the highway. §5195, cl. 5, Burns 1914, §3903 R. S. 1881, and §5249 Burns 1914, §3915 R. S. 1881; *Southern Ind. R. Co.* v. *McCarrell* (1904), 163 Ind. 469, 71 N. E. 156; *Lake Shore, etc., R. Co.* v. *McIntosh, Admr.* (1895), 140 Ind. 261, 38 N. E. 476; *Chicago, etc., R. Co.* v. *State, ex rel.* (1902), 158 Ind. 189, 63 N. E. 224; 3 Elliott, Railroads (3d ed.) §1575, and authorities there cited. It is apparent, however, that said statute does not impose on railway companies the specific duty to erect and maintain gates at highway crossings. If, then, a duty rested on the defendant to maintain gates at the crossing designated in the complaint, it must have its origin in the common law. It is well settled that the common law does not impose on railway companies the specific duty to erect and maintain gates at any highway crossing.

The common law does, however, impose on railway companies the general duty to exercise reasonable care and vigilance for the safety of travelers on the highways over and across which their railroads have been constructed; and generally it is a question of fact to be determined by the jury in a particular case whether that duty has been violated. But it is well settled also, as an independent and additional rule of law, that amenable negligence cannot be predicated on a failure to maintain gates at a highway crossing unless the particular crossing is peculiarly hazardous. *Vallance* v. *Boston, etc., R. Co.* (1893), (C. C.) 55 Fed. 364.

Whether a particular crossing presents such a peculiarly hazardous condition as that the absence of gates constitutes a violation of the duty to use due care, may ultimately become a question for the jury under proper instructions. *Pittsburgh, etc., R.*

372 APPELLATE COURT OF INDIANA,

Pittsburgh, etc., R. Co. v. Nichols, Admr.—78 Ind. App. 361.

Co. v. Tatman (1919), 72 Ind. App. 519, 122 N. E. 357; Delaware, etc., R. Co. v. Shelton (1893), 55 N. J. Law 342, 26 Atl. 937; Grand Trunk R. Co. v. Ives (1892), 144 U. S. 408, 12 Sup. Ct. 679, 36 L. Ed. 485; Central Passenger R. Co. v. Kuhn (1888), 86 Ky. 578, 6 S. W. 441, 9 Am. St. 409; Lehigh Valley R. Co. v. Brandtmaier (1886), 113 Pa. St. 610, 6 Atl. 238; Philadelphia, etc., R. Co. v. Layer (1886), 112 Pa. 414,. 3 Atl. 874; Hubbard v. Boston, etc., R. Co. (1894), 162 Mass. 132, 38 N. E. 366; 2 Thompson, Negligence §1527. ·

As a matter of pleading, however, the question is first for the court. The facts showing the conditions which exist at and surrounding the crossing must be averred in the complaint so that the court may determine, in the first instance, whether a jury can legitimately draw the conclusion therefrom that a situation of such unusual peril and risk to travelers on the highway existed as that the absence of gates was incompatible with the duty to exercise the care and diligence required by the law. To confer on juries the unrestrained authority to determine the question arbitrarily would make it possible for them to say that the absence of gates at any crossing constitutes amenable negligence, whether peculiarly hazardous or not. Wabash, etc., R. Co. v. Locke, Admr. (1887), 112 Ind. 404, 421, 14 N. E. 391, 2 Am. St. 193.

The only facts stated in the first paragraph which can possibly aid the above averment are the following: That the crossing was between the towns of LeRoy and Hebron; that the railroad crosses the highway diagonally; that the diagonal feature of the crossing causes trains from the east to approach a person traveling west on the highway from the left and rear of the traveler; that the view of a traveler on the highway was somewhat obstructed by trees and brush; and that there were two railroad tracks at the crossing.

There are no averments establishing the existence of hills, banks, deep cuts, buildings, or other objects, at or near the crossing which obstruct the traveler's view or in any manner prevent him, when exercising reasonable care for his own safety, from learning of the approach of trains in time to avoid a collision. There are no averments showing the number of trains which run daily over that crossing, or any special or unusual features as to grade, sidetracks, switches, or any other facts, from which it may be legitimately inferred that the defendant had created and was maintaining a situation of unusual peril. For aught that appears from the first paragraph of the complaint that highway, instead of being a main thoroughfare sustaining a heavy daily travel, may be an unfrequented by-way. It follows, therefore, that the first paragraph does not state facts sufficient to constitute a case of amenable negligence based on the failure to erect and maintain gates.

(2) "That the defendant * * * carelessly and negligently failed to maintain any signal or warning device * * * to warn travelers upon said highway of the approach of trains."

Does the law impose on the defendant the duty to maintain signaling devices at highway crossings? The common law does not impose on railway companies the duty to maintain at highway crossings such warning devices as sign-boards, electric bells, or gongs. *Wabash R. Co.* v. *McNown* (1912), 53 Ind. App. 116, 99 N. E. 126, 100 N. E. 383; *Shaber* v. *St. Paul, etc., R. Co.* (1881), 28 Minn. 103, 9 N. W. 575. We know of no statute which imposes that duty. No order which may have been made by the county commissioners requiring the defendant to keep a watchman at that particular crossing, has been pleaded. §5260 Burns 1914, Acts 1891 p. 364. However, in the absence of a statute or ordinance imposing that duty, if the facts

374    APPELLATE COURT OF INDIANA,

Pittsburgh, etc., R. Co. v. Nichols, Admr.—78 Ind. App. 361.

were properly pleaded, it might have been a question for the jury under proper instructions to determine whether the defendant ought to have maintained some warning device at that particular crossing in order to discharge its duty to exercise care and diligence commensurate with the obvious danger. *Shaber* v. *St. Paul, etc., R. Co., supra*. For the same reasons why the first averment of negligence is defective, this averment also fails to. state a ground of amenable negligence.

(3) "That said defendant did then and there carelessly and negligently operate a train going west on the south track, which was then and there the track used by east-bound trains; that the defendant has used the north track for west-bound trains and south track for east-bound trains for many years, which fact was then and there well known to the said Joseph Ross Wilson; that said action of said defendant company in then and there running its said train west on the south track was without notice or warning of any kind to the said Joseph Ross Wilson."

We are of the opinion that the defendant had the right to run trains either way on either track at its pleasure, and that it owed travelers on the highway no duty in that respect other than the duty to exercise reasonable care. It is held in *Cleveland, etc., R. Co.* v. *Powers* (1909), 173 Ind. 105, 117, 88 N. E. 1073, 89 N. E. 485, that travelers on the highways have no right to rely on the regularity of trains either as to time or tracks; but the precise question here presented seems not to have been involved in that case or in the cases there cited. Whether reasonable care might, under special circumstances, call for greater vigilance when a train is running on the customary track than when running on the uncustomary track, is a question not here presented. No facts are pleaded which tend to show that the hazard at that particular

MAY TERM, 1922.        375

Pittsburgh, etc., R. Co. *v.* Nichols, Admr.—78 Ind. App. 361.

crossing was in any manner increased by running the train on the uncustomary track, or that Dr. Wilson was in any way deceived thereby, or that it was practicable or even possible to have given him notice or warning of the particular track on which the train was running. This averment does not state a case of amenable negligence.

(4) "That said defendant did then and there carelessly and negligently run and operate its said train at a dangerous, reckless and unusual rate of speed of from sixty to seventy miles per hour."

It has been stated as a general rule that in the absence of legislation regulating the speed of railway trains in rural districts, a railway company has 12-15. the right, as between it and travelers on the highways, to run its trains over country highway crossings at any speed it may choose. *Lake Shore, etc., R. Co.* v. *Barnes* (1906), 166 Ind. 7, 76 N. E. 629, 3 L. R. A. (N. S.) 778; *Brooks* v. *Muncie, etc., Traction Co.* (1911), 176 Ind. 298, 95 N. E. 1006; *Indiana Union Traction Co.* v. *Love* (1912), 180 Ind. 442, 448, 99 N. E. 1005; *Pittsburgh, etc., R. Co.* v. *Ferrell* (1906), 39 Ind. App. 515, 78 N. E. 988, 80 N. E. 425; *Wabash R. Co.* v. *McNown, supra.* Rightly understood, the foregoing rule means that in the absence of legislative regulation, either directly by the state or indirectly through a municipality, no rate of speed is, of itself, negligent. In stating that rule, obviously the court did not mean to say that no situation can possibly exist at any rural crossing, however perilous, which would justify a court in permitting a case to go to the jury on the theory that a high rate of speed at a particular crossing may constitute amenable negligence. Such an arbitrary rule would do violence to the law as well as to the common sense of civilized men. In the matter of speed, as in other things, railway companies must regulate their

trains with proper regard for human life—even the life of a traveler on a country highway. The common-law rule of reasonable care requires it. However, it is equally well established, as another rule of law, that amenable negligence cannot be predicated solely and arbitrarily on the rate of speed at which a train passes over a rural highway crossing. Whether or not the rate of speed may constitute amenable negligence depends on the danger to travelers at the particular crossing. Whether a particular crossing presents a situation of such peril as that a certain rate of speed is incompatible with the duty to exercise reasonable care for the safety of travelers on the highway, may ultimately become a question of fact for the jury under proper instructions. Here again we encounter the rule of pleading which requires that the facts showing the conditions at and surrounding the crossing must be averred in the complaint so that the court may determine whether the jury can legitimately draw therefrom the conclusion that the particular crossing was one of such peril to travelers on the highway as that the rate of speed would constitute a violation of the duty to exercise due care for their safety. To permit juries to determine the question arbitrarily and without restraint would lead inevitably to erratic verdicts, and the aggregate result would be uncertainty, injustice and lawlessness. In other words, if left entirely to juries, verdicts would be so capricious that this particular field of jurisprudence would become so chaotic as to be intolerable. To avoid hopeless confusion and disorder the matter must at all times be under the guidance and control of the courts. The averment now under consideration, when aided by other relevant averments, does not show that the physical conditions at and surrounding the particular crossing present a situation so hazardous to travelers on the highway as constitutes a situation of such risk and peril

as that a jury could legitimately draw therefrom the conclusion that the alleged rate of speed at that place was incompatible with due care.   It is not averred that there were any buildings, hills, embankments, deep cuts, or objects of such character as would obstruct sight or hearing to such an extent as would make the crossing peculiarly hazardous.   There is no averment that the travel at that point was congested.   Notwithstanding the diagonal feature of the crossing, and notwithstanding the fact that the view was somewhat obscured by trees and brush, nothing is averred to show that travelers, exercising reasonable care for their own safety, could not know of the approach of trains in time to avoid a collision, even when running at the alleged rate of speed.

This subject occupies a field of considerable obscurity.   The real trouble is to determine and fix the boundary line between the province of the court and the province of the jury.   Whether or not it is possible to locate such a line, definitely and exactly, we will not now discuss.   The consensus of opinion seems to be that it is established as a general rule of law that liability for negligence cannot be predicated solely on the running of a train at a high rate of speed over an ordinary grade crossing in the country.   From that premise it follows logically, as a matter of good pleading, that the facts which make a particular crossing extraordinarily hazardous must be averred in the complaint.   The broad averment that "the defendant carelessly and negligently ran its train at a high and dangerous, reckless and unusual rate of speed of from sixty to seventy miles per hour" is not sufficient.   It would be unfair to compel a defendant to submit to the expense, annoyance and hazard of trial on such an indefinite averment; and surely it would not profit a plaintiff to be granted the privilege of a trial where his verdict must be set aside

378    APPELLATE COURT OF INDIANA,

Pittsburgh, etc., R. Co. v. Nichols, Admr.—78 Ind. App. 361.

by the court if the evidence shows nothing more than a high rate of speed. *Lake Shore, etc., R. Co.* v. *Barnes, supra; Brooks* v. *Muncie, etc., Traction Co., supra; Indiana Union Traction Co.* v. *Love, supra; Lake Shore, etc., R. Co.* v. *McIntosh, Admr., supra; Chicago, etc., R. Co.* v. *Spilker* (1893), 134 Ind. 380, 33 N. E. 280, 34 N. E. 218; *Pittsburgh, etc., R. Co.* v. *Ferrell, supra; Wabash R. Co.* v. *McNown, supra; Pennsylvania R. Co.* v. *Coon* (1886), 111 Pa. 430, 3 Atl. 234; *Ellis* v. *Lake Shore, etc., R. Co.* (1891), 138 Pa. 506, 21 Atl. 140, 21 Am. St. 914; *Chicago, etc., R. Co.* v. *Dillon* (1888), 123 Ill. 570, 15 N. E. 181, 5 Am. St. 559; *Memphis, etc., R. Co.* v. *Martin, Admr.* (1897), 117 Ala. 367, 23 So. 231; *Grand Trunk R. Co.* v. *Ives, supra;* 22 R. C. L. 1011 *et seq.* and authorities there cited; 2 Thompson, Negligence §1876, and authorities there cited.

(5) "And did, then and there, carelessly and negligently run and operate said train at said dangerous, reckless and unusual rate of speed without any signal device, gates, or other means of warning travelers upon said public highway, and did then and there so operate said train as aforesaid without sounding a whistle or ringing a bell, or in any other manner warning persons traveling upon said highway of the approach of said train";

This averment undoubtedly states a ground of amenable negligence under the statute. §§5431, 5432 Burns 1914, §§4020, 4021 R. S. 1881. It follows that the first paragraph of complaint is good as against the demurrer. How, then, could the other averments have been reached? As to them, what legitimate method of attack was available to the defendant?

Counsel for defendant conceived his remedy to be by motion to make definite and certain. Therein he was mistaken. That motion is appropriate where the aver-

ment is sufficient to withstand a demurrer, but is indefinite because ambiguous. In such cases the defendant is entitled to have the averment made certain in order that he may know in advance which road the plaintiff intends to take, and thereby avoid a surprise. But where the averment is utterly worthless, a motion to make definite and certain is not legitimate. Counsel for the defendant contended that the averments as to negligence were worthless and wholly insufficient to constitute amenable negligence; and then, by his motion, he asked the court to order the plaintiff to state a cause of action against his client. By pursuing that course, counsel was not promoting the interest of his client; for while the defendant presumably was interested in avoiding an action, naturally it would not be anxious to have an action perfected against it. But none of the averments are ambiguous, and the motion was properly overruled. 1 Watson, Revision Works Practice §§826, 828; 31 Cyc 644. See also, 21 R. C. L. 600.

On the defendant's theory of the complaint, the appropriate method of attack would have been by motion to strike out. §391 Burns 1914, §282 R. S. 1881; 1 Watson, Revision Works Practice §838.

Counsel contends, however, that each averment states a conclusion, and that therefore he pursued the remedy prescribed by statute. §343a Burns 1914, Acts 1913 p. 850. This contention is rather indefinite, but we gather from the briefs and argument that he means to say that whether or not an act was done *negligently,* is a conclusion. To dispose of this contention understandingly we must revert to fundamentals.

There is confusion in the books as to whether negligence is a question of fact or of law. However, a thoughtful observer will see that the word "negligence" is sometimes used in a broad sense and sometimes in a

narrow sense. In the broad sense it includes the element of liability. *Indianapolis, etc., R. Co.* v. *Watson* (1888), 114 Ind. 20, 35, 14 N. E. 721, 15 N. E. 824, 5 Am. St. 578; *Wright* v. *Atlantic, etc., R. Co.* (1910), 110 Va. 670, 66 S. E. 848, 25 L. R. A. (N. S.) 972, 19 Ann. Cas. 439. In the narrow sense the element of liability is excluded. In some cases the defendant's negligence may be proved or even confessed, and yet there may be no liability; because the plaintiff was guilty of contributory negligence, or had assumed the risk; or because the defendant owed the plaintiff no duty; or because the defendant's negligence was not the proximate cause of the plaintiff's injury. *Indianapolis Traction, etc., Co.* v. *Thornburg* (1919), 74 Ind. App. 642, 125 N. E. 57. In negligence cases, as in all other cases, the question of *liability* is determined by applying the law to the ultimate facts—by bringing the law and the facts together. But we are now dealing with a pleading, and the function of a pleading is to present *facts* only.

As used in the first paragraph of complaint the noun "negligence," the adjective "negligent," and the adverb "negligently," signify that which is within the realm of facts. Otherwise they could have no proper place in a pleading.

A principle of natural ethics, universally recognized by civilized men, imposes on each individual the duty to so regulate his life activities as not to injure another, either intentionally or carelessly. The law of torts rests on that ethical principle. There are two well-known classes of torts, which may be designated positive and negative—depending on the mental attitude of the tortfeasor. The former class includes those tortious acts or omissions which are the result of wilfulness; and the latter class embraces those tortious acts or omissions which are the result of carelessness. When the pleader relies on a positive tort he avers that it was done wil-

MAY TERM, 1922. 381

Pittsburgh, etc., R. Co. *v.* Nichols, Admr.—78 Ind. App. 361.

fully, wantonly, intentionally, or by design. When he relies on a negative tort he usually avers that it was done negligently, carelessly or recklessly. In either case the averment states an ultimate fact—nothing more or less. *Louisville, etc., R. Co.* v. *Schmidt* (1886), 106 Ind. 73, 5 N. E. 684; *Louisville, etc., R. Co.* v. *Bryan* (1886), 107 Ind. 51, 7 N. E. 807; *Gregory, Admr.*, v. *Cleveland, etc., R. Co.* (1887), 112 Ind. 385, 14 N. E. 228; *Wabash, etc., R. Co.* v. *Locke, Admr., supra; Pittsburgh, etc., R. Co.* v. *Ferrell, supra;* 1 Thornton, Negligence §7; Thompson, Negligence §2361. Therefore, §343a Burns 1914, *supra,* is not available to the defendant. *Central Bank, etc.* v. *Martin* (1918), 70 Ind. App. 387, 121 N. E. 57; *Outing Kumfy-Kab Co.* v. *Ivey* (1919), 74 Ind. App. 286, 125 N. E. 234.

The defendant has insisted throughout that the first paragraph of complaint contains five distinct and independent averments of negligence, on each of which, separately and severally, the plaintiff relies for a recovery. On that basis the defendant should have moved for an order to require the plaintiff to separate the first paragraph into further paragraphs so as to present but one theory in each paragraph. That would have been a legitimate method of attack; for if such a motion had been sustained and the order complied with, the defendant then could have tested the sufficiency of each paragraph by demurrer. This brings us to an interesting subject which requires brief attention.

The rule has been long established that a complaint should proceed on a single definite theory; and that is the intention of our Code. §343, cl. 3, Burns 1914, §338 R. S. 1881. There may be cases where two or more negligent acts or omissions are so related to or dependent on each other as that without the concurrence of all of them there would have been no injury. *Pittsburgh, etc., R. Co.* v. *Broderick* (1913), 56 Ind. App. 58, 71,

382 APPELLATE COURT OF INDIANA,

Pittsburgh, etc., R. Co. v. Nichols, Admr.—78 Ind. App. 361.

102 N. E. 887; *Lake Shore, etc., R. Co.* v. *McIntosh, Admr., supra.* In such a case it is proper, of course, to combine the negligent acts and omissions in one paragraph; for then there is but one theory. But where the acts or omissions are of such a nature as that any one of them, independently of the others, might have caused the injury, and the pleader desires to rely on them separately, each one should be stated in a separate paragraph. To permit two or more independent acts of negligence to be averred in the same paragraph of complaint, is unfair to the defendant and confusing and perplexing to the courts. *Baltimore, etc., R. Co.* v. *Trennepohl* (1909), 44 Ind. App. 105, 87 N. E. 1059; *Western Union Tel. Co.* v. *Reed* (1884), 96 Ind. 195; 1 Watson, Revision Works Practice §331, and authorities there cited; 2 Thornton, Negligence §2333, and authorities there cited.

Also, it would have been legitimate for the defendant to have moved the court to require the plaintiff to elect the particular theory of negligence on which he desired to go to trial. But that was not done.

However, on a fair and rational view of the first paragraph as an entirety, it appears that the plaintiff did not rely on each averment of negligence separately and independently, and as being disconnected and disassociated from the others. It must be appreciated that the matter comes to us *after* trial; and it appears from the record that the cause was tried on the theory that the particular negligence which caused the collision was the negligent failure to give adequate warning of the approach of the train by ringing the bell and sounding the whistle, taken *in connection with all the other circumstances averred.* The facts showing the conditions at and surrounding the crossing at the time of the accident and the speed of the train were admissible as *res gestae* and as having a direct bearing on the question of the

defendant's negligence and the deceased's contributory negligence. *Pittsburgh, etc., R. Co.* v. *Yundt* (1881), 78 Ind. 373, 41 Am. Rep. 580; *Louisville, etc., R. Co.* v. *Stommel* (1890), 126 Ind. 35, 25 N. E. 863; *Lake Shore, etc., R. Co.* v. *McIntosh, Admr., supra; Cincinnati, etc., R. Co.* v. *Worthington* (1902), 30 Ind. App. 663, 65 N. E. 557, 66 N. E. 478, 96 Am. St. 355; 2 Thompson, Negligence §1892, and authorities there cited.

The first paragraph is not a model pleading. It would have been better if the pleader had averred the conditions at and surrounding the crossing without averring that their existence was the result of defendant's negligence; and then, in view of the surroundings, relied solely on the negligent failure to give adequate warning of the approach of the train. But the fact that the pleader did not follow that course, does not make the pleading bad. As to the first paragraph of complaint, there is no error in overruling the motion to make more specific nor in overruling the demurrer.

The averment which distinguishes the second paragraph of complaint from the first paragraph, is set out in the above statement. Assuming that the trainmen saw Dr. Wilson "when he was about to enter upon said crossing," was it their duty to slacken the speed of the train?

Where a train and a traveler on the highway approach a crossing at the same time, it is not the duty of the railway company to stop its train; but it is the duty of the traveler, in obedience to the known custom of the country, to stop and not attempt to pass in front of the advancing train. The engineer may rely on the presumption that the traveler will stop at a place of safety; and therefore the law imposes no duty on him to slacken the speed of his train. However, the foregoing rules are not without limitation. If the crossing be peculiarly hazardous, or if it is appar-

ent that the traveler is unaware of his danger, or is unable to extricate himself therefrom, it then becomes the duty of the company to exercise reasonable care by giving warnings, applying brakes, and taking such other precautions as the situation may require to avoid a collision. The highest duty resting on men is to preserve human life and avoid inflicting injury on the human body. That duty rests also upon railway companies. *Bellefontaine R. Co.* v. *Hunter, Admr.* (1870), 33 Ind. 335, 357 *et seq.*, 5 Am. Rep. 201; *Toledo, etc., R. Co.* v. *Jones* (1875), 76 Ill. 311; *Chicago, etc., R. Co.* v. *Reilly* (1904), 212 Ill. 506, 72 N. E. 454, 103 Am. St. 243; *Heddles* v. *Chicago, etc., R. Co.* (1890), 77 Wis. 228, 46 N. W. 115, 20 Am. St. 106; *Dyson* v. *New York, etc., R. Co.* (1889), 57 Conn. 9, 17 Atl. 137, 14 Am. St. 82; *Piskorowski* v. *Detroit, etc., R. Co.* (1899), 121 Mich. 498, 80 N. W. 241, 80 Am. St. 518; *Wright* v. *Atlantic, etc., R. Co., supra; Florida, etc., R. Co.* v. *Foxworth* (1899), 41 Fla. 1, 25 So. 338, 79 Am. St. 149; *Judson* v. *Great Northern R. Co.* (1895), 63 Minn. 248, 65 N. W. 447; *Grand Trunk R. Co.* v. *Ives, supra.* See, 3 Elliott, Railroads (3d ed.) §1671, and authorities there cited.

All that has been said concerning the first paragraph of complaint is equally applicable to the second; and, as to the latter, the court did not err in overruling the motion to make more specific nor in overruling the demurrer.

We will now consider the only questions presented under the assignment that the court erred in overruling the motion for a new trial.

(1) In the fifth paragraph of the charge to the jury the court said: "In determining the credibility of witnesses and in weighing the evidence of the various witnesses, you may consider how far the same is consistent or inconsistent with the ordi-

nary conduct of men under the circumstances shown to surround the transaction." The objection to that part of the instruction is that "there was no evidence to show the ordinary conduct of men under such circumstances." The statement is perhaps justly subject to criticism; but when taken in connection with what precedes and what follows in the same paragraph it cannot be said that it is harmful or misleading. The sole purpose of the entire paragraph was to explain to the jury what elements they had a right to consider in determining the credibility of witnesses and the weight they would give to the testimony of the several witnesses. The presumption is that jurors, in common with other men, possess a knowledge of human nature and of the natural tendency of men to act in a certain way under certain circumstances; and it is the duty of jurors to use their knowledge of human nature in weighing testimony. The fact that jurors possess that common knowledge of human nature is one of the fundamental reasons for maintaining the system of trial by jury. We regard the objection to this instruction as frivolous.

(2) By the eighth paragraph of the charge, the court attempted a general definition of negligence in the following language: "Negligence is defined by the 26. law to be the omitting to perform a duty required by law, or the failure to do something that a reasonably prudent person would do under the circumstances."

The objection is that a reasonably prudent person may act sometimes very imprudently; and that there is no evidence of what a prudent person would have done under the circumstances, and therefore the instruction furnished no standard by which the jurors could determine whether or not there was negligence.

The prudent-man theory is not entirely satisfactory,

and has been criticised by the Supreme Court. *Pennsylvania Co.* v. *Marion* (1885), 104 Ind. 239, 3 N. E. 874. Nevertheless the courts continue to make use of it. *Union Traction Co.* v. *Berry, Admr.* (1919), 188 Ind. 514, 121 N. E. 655, 124 N. E. 737. We would not be justified in entering upon a general discussion of this subject. With respect to appellant's criticism it will be sufficient to say that in the nature of things it cannot be shown by direct evidence what an ordinarily prudent person would do under given circumstances. No one, testifying as an ordinary witness or as an expert witness, could possibly enlighten a jury on that point. The matter is within the realm of pure speculation. Whether one who is charged with negligence acted, under the particular circumstances, as a reasonably prudent person, is a question, the answer to which must rest in the sound judgment of the jurors. Perhaps it would be better to require the jurors to answer, under proper instructions, the question, Did the defendant, under the circumstances, use due care? However, the language criticised is so general as to be harmless. The worst that can be said of it is that it is an inexcusable economic waste for courts to use generalities when instructing juries.

(3) By the ninth paragraph of the charge the jurors were told: "That there are several elements necessary to a recovery by the plaintiff; that before the plaintiff can recover it must appear by a fair preponderance of the evidence that the defendant is chargeable with one or more of the acts of negligence averred in the complaint; that before any act of negligence can avail the plaintiff it must appear that such act of negligence was the approximate cause of the injury; that merely to show negligence on the part of the defendant is not enough, but it must be shown also that such negligence was the cause of the injury; that

there can be no recovery if Dr. Wilson was guilty of negligence which contributed to his injury; and that if the defendant and Dr. Wilson were both chargeable with negligence, there can be no recovery."

The objection urged against this instruction is that the statement that "before the plaintiff can recover it must appear that the defendant is chargeable with one or more of the acts of negligence averred in the complaint" is erroneous for the reason that but one act of negligence is properly averred.

In connection with the ninth instruction we must consider the tenth and sixteenth instructions. The tenth relates to the operation of the train and the duty of the defendant's servants in charge thereof to sound the whistle and ring the bell as provided by statute.

By the sixteenth instruction the jurors were told that they had no right to find the defendant guilty of negligence from the fact alone that the train was operated at a certain speed; but that they should take into consideration the circumstances and the care used in determining whether the speed was negligent at the time and place in question.

The ninth instruction is not peremptory and when taken in connection with all the other instructions, and thus applied to the evidence, it does not constitute reversible error. *Public Utilities Co.* v. *Iverson* (1918), 187 Ind. 672, 121 N. E. 33.

(4) The objection to the eleventh paragraph of the charge is that the court stated that a traveler on the highway who is about to cross a railroad is required to exercise ordinary care. Counsel for appellant contends that the true rule is that the traveler must exercise care commensurate with the known danger, and that where the danger is extraordinary the care must be extraordinary. Counsel does not deal fairly with this paragraph; for, by it the court

told the jury the very things which he says they should have been told. The last sentence of this paragraph should be specially noted: "It is the duty of a person approaching a railroad crossing, known to him to be dangerous, to exercise care commensurate with the known danger." Moreover, by the fourteenth paragraph the rule as to the duty of the traveler to stop, look and listen, was clearly and correctly stated.

(5) By the twelfth paragraph the court told the jury that the law imposes upon both parties the duty to use reasonable care and precaution to avoid accident and that it was the duty of Dr. Wilson to look out for the approach of trains on both tracks and to observe all reasonable precautions before attempting to cross. The criticism of this instruction is that it left the jury to determine what constitutes reasonable care, and also that the situation may have called for extraordinary care. The first criticism is not well taken for the reason that by other parts of the charge the traveler's duty was specifically stated. The second criticism is effectually disposed of by what we have said concerning the eleventh paragraph.

(6) By the thirteenth paragraph of the charge the court told the jury that in determining the question of negligence or contributory negligence they might consider the situation and the surroundings of the crossing at the time of the accident as shown by the evidence; the decedent's familiarity with the crossing, with the running of trains, and with the fact that the defendant maintained no gates or flagman at the crossing; and such other facts and circumstances as the evidence had disclosed. For the reasons stated in our discussion of the complaint, there is no error in the thirteenth instruction.

(7) By the sixteenth paragraph the jurors were told that they did not have the right to find the defendant

MAY TERM, 1922.        389

Pittsburgh, etc., R. Co. *v.* Nichols, Admr.—78 Ind. App. 361.

guilty of negligence from the fact alone that its
31. train was operated at a certain speed; but that
they should take into consideration the circumstances, demands and necessities of the public generally,
the defendant's duty in that regard, and the care used
to avoid injury, in determining whether the speed
adopted by it was negligent or otherwise, at the time
and place in question.

The criticisms of this instruction are so brief and
remote as would justify us in ignoring them. In substance they amount to the following: there is no evidence of the demands and necessities of the public
generally; and the jury had no right to find the appellant guilty of negligence in running this train at the
speed it was run. It is a fair presumption that by "the
demands and necessities of the public" the court referred to the public demand and necessity for rapid
transit. While travelers on the highways have certain
rights with respect to railroad crossings, it is proper
and just that their rights should be considered in connection with the rights of those who are traveling on
passenger trains and those whose property is being
transported on freight trains. The statement of the
court is too general to be of much help to the jury, but
it is favorable rather than harmful to the defendant.
The subject is one within the common knowledge of
men and is not a matter to be proved by evidence. The
second criticism is wholly without merit; for the jurors
were specifically told that they could not find the defendant guilty of negligence by reason of the speed
alone.

(8) The criticisms of the seventeenth and eighteenth
paragraphs are so trivial that we would not be justified
in discussing them.

It should be noted that by the first paragraph of the
charge the court eliminated the averment that the de-

390    APPELLATE COURT OF INDIANA,

Pittsburgh, etc., R. Co. v. Nichols, Admr.—78 Ind. App. 361.

fendant negligently ran its train on the north track contrary to custom and without warning. With that element eliminated the case was fairly presented to the jury on the theory that the defendant negligently failed to give the statutory signals; and in connection therewith it was proper to consider the speed of the train and all the conditions at and surrounding the crossing.

The evidence made a stronger case than the complaint. From the uncontradicted evidence it appears that the highway is a main thoroughfare and sustains a heavy daily traffic; that while the railroad is not parallel with the highway, yet it is so nearly so that a west-bound train when approaching the crossing is running so nearly in the rear of a west-bound traveler on the highway that the traveler must look back to see the train; that the railroad as maintained upon and over the highway is substantially higher than the general level of the highway; that just east of the crossing the railroad tracks are laid in a deep cut; that the cut tends materially to obstruct a traveler's view, and to prevent his hearing the noise, of an approaching west-bound train; and that the train which killed Dr. Wilson was running "quietly" as it neared the crossing. The engineer testified that the cut was not so deep but that while passing through it he could see the highway; but other witnesses testified that a traveler on the highway could not see a train while in the cut. The engineer testified also that the train was late and that he was making up time; that in his opinion he was running fifty-five miles, but might have been running sixty miles per hour; and that he did not see Dr. Wilson until his automobile came upon the track. On all the facts which the evidence tends to establish, the court and jury may have regarded the crossing as a peculiarly hazardous one; and if they did so, we cannot override their judgment in that respect. Under the

circumstances, whether the trainmen used due care and vigilance, was a question for the jury under the instructions.

Judgment affirmed.

McMahan, J., not participating.